# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 24, 2010 Session Heard at Memphis

## JOANNE WELLS v. MARK WELLS

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-000028-08      Robert L. Childers, Judge

### No. W2009-01600-COA-R3-CV - Filed March 15, 2010

This is divorce case, ending a fifteen year marriage. Appellant-Husband appeals from the trial court's classification and division of marital property. Appellee-Wife appeals from the trial court's decision to impute income to her. Finding no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Stuart B. Breakstone and Kathy Baker Tennison, Memphis, Tennessee, for the appellant, Mark Wells.

Joseph Michael Cook, Germantown, Tennessee, for the appellee, Joanne Wells.

### OPINION

Appellant, Mark Wells ("Mr. Wells"), and Appellee, Joanne Wells ("Mrs. Wells") were married on October 15, 1994. They separated in 2007, with one child being born of the marriage. Mrs. Wells filed for divorce on January 4, 2008. Mr. Wells filed an answer on April 18, 2008, denying all material allegations, but requesting that the parties be divorced.

At the time the complaint was filed, the parties owned a home in Arlington, TN ("Marital Residence"), and a lot with a trailer home that they rented. Shortly before filing for divorce, the parties sold a home in Cordova, TN ("Cordova Home"). The Cordova Home sold for $116,814.86; this money was placed in a joint savings account prior to the filing of the complaint for divorce. During the pendency of the separation and divorce, Mr. Wells withdrew approximately twenty thousand dollars from this account. Upon learning of Mr.

Wells' withdrawal, Mrs. Wells withdrew sixty-five thousand of the remaining funds, placing the money in a savings account in her name. Mrs. Wells then spent approximately eleven thousand of the withdrawn money. At the time of trial, Mrs. Wells' account had a balance of $54,233.67. The joint account had a remaining balance of $165.40, as Mr. Wells had withdrawn the majority of what remained in the joint account after Mrs. Wells' withdrawal. In January 2006, Mr. Wells' father transferred, to Mr. Wells, a parcel of real estate located in Arkansas. The subject deed does not name Mrs. Wells as an owner, and indicates that the property was transferred for the consideration of ten dollars. Mr. Wells testified that no money was exchanged for the property. However, approximately six months before this transfer, Mr. Wells loaned his father $10,000 of marital funds.

Both parties filed an affidavit of income and expenses. On her affidavit, Mrs. Wells claimed that she has no income. Mr. Wells' affidavit listed his income from his employment, along with rental income from the parties' trailer home. Mr. Wells later filed another affidavit of income and expenses. Therein, he again listed his income from his employment, and income from the rents collected from the trailer home, but noted that the rental income was used to pay expenses, maintenance, and taxes on both the Marital Residence and the rental property.

On May 7, 2008, Mrs. Wells filed a motion *pendente lite*, requesting alimony, child support and attorney fees. Following a hearing before the Divorce Referee, Mr. Wells was ordered to pay $564 a month in child support, and $500 a month in temporary alimony from June through September 2008. Mr. Wells was also ordered to continue paying the mortgage on the Marital Residence, and the health insurance premiums for both Mrs. Wells and the child. In addition, Mr. Wells was also ordered to pay $500 in attorney fees to Mrs. Wells' attorney. The trial court entered an order reflecting the Divorce Referee's findings on June 23, 2008. On January 22, 2009, Mrs. Wells filed a motion to modify the *pendente lite* support. A hearing on Mrs. Wells' motion was held on February 24, 2009, and the Divorce Referee found that there was a significant variance to justify modification of child support. The Divorce Referee found that Mr. Wells had a gross income of $6,192 a month from his employment, and was also receiving $500 a month rent on the parties' trailer home. However, the Divorce Referee did not impute income to Mrs. Wells, finding that she had zero income. Using these incomes, the Divorce Referee increased child support to $944 a month. The Divorce Referee also found that Mr. Wells should pay $500 a month in alimony, along with Mrs. Wells' attorney fees for the hearings on modification. On February 27, 2009, the trial court entered an order confirming the Divorce Referee's ruling.

Mrs. Wells filed a Petition for Writ of *Scire Facias* on February 23, 2009. In her petition, Mrs. Wells alleged that Mr. Wells had taken out a $15,000 loan from his 401K plan in violation of the temporary injunction. Mrs. Wells also alleged that, in violation of the

temporary injunction, Mr. Wells spent between $100,000 and $150,000 on four wheelers and races for the parties' daughter. Mr. Wells filed an answer on March 2, 2009, wherein he denied that he had written notice of the temporary injunction. Mr. Wells admitted that he took a $15,000 loan from his 401K, but stated that he did not willfully intend to violate a court order. He further denied willful violation of the court order regarding money for his daughter's four wheeler racing activities.

At the time of trial, Mrs. Wells was forty-five years old, and had completed high school and a course in medical coding. Her last employment was in 2004, as an administrative assistant. At the time of the hearing, Mr. Wells had completed high school as well as some community college and technical training courses. He also held a license to perform heating and air conditioning work. At the time of trial, Mr. Wells was working as a machinist and operating his own business from the Marital Residence.

Following a bench trial, the trial court declared the parties divorced. The trial court found that Mr. Wells had an income of $6,100 a month and imputed an income of $27,000 a year to Mrs. Wells. The trial court found that, while both parties are employable, Mr. Wells has a greater earning capacity than Mrs. Wells. The trial court specifically noted that Mrs. Wells could have done more to find a job, but that there was "significant disparity" in earning capacity. Accordingly, the trial court awarded Mrs. Wells transitional alimony of $500 a month for four years. Using the same income figures, the trial court set child support at $596 a month and entered a permanent parenting plan.

The trial court then classified and divided the property. The trial court ordered both the Marital Residence, and the trailer home, to be sold and the proceeds to be split equally between the parties. Mr. Wells was ordered to pay Mrs. Wells one-half of the rental proceeds from the trailer until it was sold, although the parties were to be equally responsible for the maintenance and taxes on the property. The trial court allowed Mr. Wells to live in the Marital Residence until it was sold, but the trial court held that Mr. Wells would be responsible for the mortgage payments, utilities, taxes, insurance and maintenance on the Marital Residence until it is sold. The trial court ordered Mrs. Wells to reimburse Mr. Wells for one-half of the repairs necessary to sell the Marital Residence.

The trial court addressed the Arkansas property transferred to Mr. Wells by his father. The court valued the property at $28,825, and classified it as marital property; this decision was based upon the court's determination that the transfer of the property had been precipitated by the $10,000 marital funds loan that Mr. Wells had made to his father, and the lack of proof that this loan had been repaid. Consequently, the trial court found that Mrs. Wells had an interest in one-half of the amount of the loan. To account for this money, the trial court awarded Mrs. Wells the funds she held in her savings account in excess of her

share of marital funds from the sale of the Cordova Home. The trial court held that this was approximately $4,100.

The trial court found that each party was entitled to one-half of the proceeds from the sale of the Cordova home, or $58,407.43. The trial court found that $54,233.67 of the proceeds were held by Mrs. Wells in a savings account, which the trial court classified as marital property. Mr. Wells had withdrawn and spent the majority of the remaining proceeds from the joint savings account, into which the money was originally placed. The trial court awarded Mrs. Wells all of the remaining $54,233.67. Specifically, the court held that, while Mrs. Wells had spent approximately $11,000 of the funds, the excess in the account represented her share of the Arkansas property, as discussed above. The trial court held that $165.40 remained in the joint account, into which the proceeds were originally placed, and awarded this account to Mr. Wells.

The trial court addressed the parties' remaining bank accounts. The trial court classified two checking accounts held by Mr. Wells, with respective balances of $246.87 and $633.29, as marital property, and awarded these accounts entirely to Mr. Wells. The trial court classified two savings accounts held in Mr. Wells' name, with balances of $65.08 and $224.00, as marital property, and also awarded these amounts to Mr. Wells.

The trial court held that Mr. Wells' 401k was marital property, and divided it equally. He valued the 401k at $31,556.99, divided it in half, and deducted $12,824.48 from Mr. Wells' share, representing the balance remaining on the loan Mr. Wells took out from the 401k during the pendency of the divorce. The trial court found that Mrs. Wells had separate property of $987.63 in an IRA she obtained while working prior to the marriage. Mrs. Wells was awarded the IRA in its entirety. The trial court credited Mrs. Wells with a $2,000 loan she made to her sister. The trial court also credited Mr. Wells with $3,500 in gifts he made to other people. The trial court also divided the personal property. He allocated much of the four wheeler equipment purchased since the separation to Mr. Wells. The trial court also credited Mr. Wells with $11,000 in rents he had received on the parties' trailer home since the time of separation. The trial court ordered that each party be responsible for their own credit card debt.

As a result of this classification, the trial court found that there was a total of $236,986.01 in marital assets. Of this amount, Mr. Wells was awarded $95,698.34, or forty-four percent of the marital estate. Mrs. Wells was awarded $122,091.81, or fifty-six percent of the marital estate. On March 18, 2009, a Final Decree was entered reflecting the division.

On April 17, 2009, Mr. Wells filed a Motion to Alter or Amend the Final Decree. Mr. Wells asserted that the trial court erred in calculating Mrs. Wells' portion of the marital

estate. Specifically, Mr. Wells asserted that, in order to maintain the percentages at which the trial court had divided the estate, he was entitled to an additional $2,500. Also, Mr. Wells asserted that the trial court erred in classifying the Arkansas property as marital property; specifically, Mr. Wells asserted that trial court should have found that the property was his separate property or, in the alternative, that the court should have classified only $10,000 of the property as marital.

On July 2, 2009, the trial court entered an ordering denying Mr. Wells' Motion to Alter or Amend. In this order, the trial court corrected its calculation error so that the division would accurately reflect that Mrs. Wells was awarded $126,275.57 of the marital estate. This correction resulted in 43.1% of the marital estate going to Mr. Wells, and 56.9% of the estate going to Mrs. Wells. In this order, the trial court emphasized its finding that the evidence presented showed that Mr. Wells made a $10,000 loan to his father, that these funds were not repaid in kind, but rather were repaid when Mr. Wells' conveyed the Arkansas property to Mr. Wells, thereby making the Arkansas property marital.

Mr. Wells timely appealed and raises the following issues for our review, as we restate them:

1.      Whether the trial court erred in classifying the Arkansas property as marital property?

2.      Whether the trial court erred in classifying the rental income and gifts made during the parties' separation as marital and allocating them to the Mr. Wells?

3.      Whether the trial court's division of property distributing fifty-seven percent of the marital estate to Mrs. Wells is equitable?

Mrs. Wells also raises an issue for our review:

1.      Whether the trial court erred in imputing Mrs. Wells' income at $27,000 a year?

We must first point out that neither Mr. Wells nor Mrs. Wells provided this Court with a table as required by Rule 7 of the Rules of the Court of Appeals. Rule 7 states:

> (a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This

-5-

table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table *must include a citation to the record* where each party's evidence regarding the classification or valuation of the property or debt can be found and *a citation to the record where the trial court's decision* regarding the classification, valuation, division, or allocation of the property or debt can be found.

(c) If counsel disagrees with any entry in the opposing counsel's table, counsel must include in his or her brief...a similar table containing counsel's version of the facts.

(Emphasis added). This Court has previously held that, "'where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements.'" ***Slaughter v. Slaughter***, No. W2007-01488-COA-R3-CV, 2008 WL 1970491, at *2 (Tenn. Ct. App. 2008)(quoting *Stock v. Stock*, No. W2005-02634-COA-R3-CV, 206 WL 3804420, at *5, n.3 (Tenn. Ct. App. 2006)(quoting *Howell v. Howell*, No. W2001-01167-COA-R3-CV, 2002 WL 1905307, at *4 (Tenn. Ct. App. 2002)(citing *Bean v. Bean*, 40 S.W.3d 52 (Tenn. Ct. App. 2000)). "This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property." ***Slaughter***, 2008 WL 1970491 at *2 (citations omitted). However, for good cause, this Court may suspend the requirements of these rules in a particular case. Tenn. R. App. Ct. Rule 7. The intent of the Rules is for all cases to be decided on the merits if possible. With this in mind we have conducted a tedious and meticulous review of the parties' briefs and the record and have been able to determine the evidence presented at trial and the findings by the trial court. Consequently, we will proceed with our review despite the parties' failure to comply with the rules of this Court. While in this case we chose to proceed with our review despite the fact that the parties chose not to abide by the rules of this Court, we cannot say we will be so accommodating and choose to do the same in the future.

## Classification

Mr. Wells contends that the trial court erred when it classified the Arkansas property, the rental income from the parties' trailer home, and gifts made to third parties by Mr. Wells as marital assets. The division of marital property, including its classification and valuation are findings of fact. ***Woodword v. Woodword***, 240 SW3d 825, 828 (Tenn. Ct. App. 2007). Accordingly, the trial court's decisions regarding classification, valuation and division of

property are reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise. ***Farrar v. Farrar***, 553 S.W.2d 741, 743 (Tenn. 1977). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." ***Heffington v. Heffington,*** No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010)(citing ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002).

When making its division of property, the trial court must first classify the property. Tennessee recognizes two distinct types or classes of property: "marital property" and "separate property." The distinction is important because Tenn. Code Ann § 36-4-121(a) "provides only for the division of marital property." ***Batson v. Batson***, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Marital property is defined as:

> all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of the filing of a complaint for divorce...

Tenn. Code Ann. § 36-4-121(b)(1)(2002). Separate property is defined as :

> all real and personal property owned by a spouse before marriage...; property acquired in exchange for property acquired before marriage; income from an appreciation of property owned by a spouse before marriage except when characterized as marital property...; property acquired by a spouse at any time by gift, bequest, devise or descent; pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121 (b)(2)(2002). We will address each piece of property separately.

*Arkansas Property*

On appeal, Mr. Wells submits that the Arkansas property was a gift from his father; therefore, under Tenn. Code. Ann. § 36-4-121(b)(2)(D), Mr. Wells contends that the Arkansas property should be classified as his separate property not subject to division. As

discussed above, the trial court held that the Arkansas property was marital property based on the fact that Mr. Wells had loaned his father ten thousand dollars of marital funds, without providing sufficient proof that this money was paid back. On Mr. Wells' motion to alter or amend, the trial court reiterated this finding by explicitly stating:

> The Court further wants to emphasize that it has made a specific finding from the evidence presented that [Mr. Wells] used approximately $10,000.00 in marital funds to pay for his father's divorce which was not repaid and that in return his father conveyed the Arkansas real estate to [Mr. Wells] which became marital property.

Based upon this classification, the trial court credited Mr. Wells with a marital asset of $28,825. In order to secure Mrs. Wells' interest in these loaned funds, the court credited her with the savings account, which account contained the money she withdrew from the parties' joint savings account holding the funds from the sale of the Cordova home.

Property obtained during marriage is presumed to be marital property. Tenn. Code. Ann. §36-4-121(b)(1)(A); *see also* ***Dunlap v. Dunlap***, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998). A party may rebut this presumption by showing that the property was a gift to that party alone. ***Id.*** The burden of proving that the property was a gift and, therefore, separate property falls upon the spouse asserting that the property is a gift. ***Id.***

After reviewing the record, this Court finds that the evidence does not preponderate against the trial court's finding that the Arkansas property was not a gift made to Mr. Wells alone; rather, the proof supports the court's finding that this property was transferred as repayment for the loan made with marital funds. At trial, the parties presented almost no evidence outside their competing testimonies concerning the loan made to Mr. Wells' father and the Arkansas property. In determining that the Arkansas property was not a gift, the trial court implicitly made a credibility finding by choosing to disregard Mr. Wells' unsubstantiated testimony that his father had repaid the loan and the property was a gift. We defer to the trial court's findings on credibility absent clear and convincing evidence to the contrary. ***Heffington v. Heffington,*** No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010)(citing ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002).

The record shows that Mr. Wells obtained the Arkansas property in January 2006 from his father. On cross examination, Mr. Wells admitted giving his father ten thousand dollars of marital funds in 2005 to pay for the father's divorce. He stated that his father had paid him back, but that he could not show where his father paid him back. The warranty deed transferring the property was admitted into evidence. The deed states that the Arkansas

property was transferred for the consideration of ten dollars. However, Mr. Wells testified that he did not pay his father anything for this property. He testified that, at the time the property was transferred, a house was already built on the land. Mrs. Wells testified that, since obtaining the property, marital funds had been used to pay the property taxes on this property. Mrs. Wells further testified that, at the time the property was acquired, the land was vacant, but that, since that time, a one bedroom house and garage had been built on the property.

Based upon our review of the evidence, we find that Mr. Wells did not rebut the presumption that property acquired during marriage is marital property. The evidence does not preponderate against the trial court's finding that the Arkansas property was transferred as repayment for the loan, nor is there clear and convincing evidence contradicting the trial court's finding on the credibility of Mr. Wells. Consequently, we find that the trial court did not err in finding that the Arkansas property was marital property.

Mr. Wells contends that even if this Court determines that the Arkansas property is marital, we should find that only ten thousand dollars of the property (which amount represents the amount of the loan made to his father) should be classified as marital property. We find this contention to be without merit. First, we reiterate our finding that Mr. Wells did not prove that the Arkansas property was a gift. Because he did not prove that the Arkansas property was a gift, he did not rebut the presumption that the Arkansas property was marital property when it was obtained. Accordingly, the *entire* value at the time of acquisition and any increase in value of the property becomes marital property. Tenn. Code Ann. § 36-4-121(b)(1)(B) (2002). Mr. Wells did not prove that *any* part of this property was a gift. Further, we note that no evidence was presented at trial as to the value of the property at the time of transfer. Moreover, the manner in which the trial court gave Mrs. Wells' credit for her share of the Arkansas property in effect treated only $10,000 of the property as marital. The Arkansas property was valued at $28,825. However, the trial court only awarded Mrs. Wells approximately $4,100 as her share of this property, based upon the court's determination that her share would come from the funds in her savings account that exceeded her share of the funds from the sale of the Cordova home.

*Rent*

Mr. Wells next contends that the trial court erred in charging Mr. Wells with $11,000 as a marital asset for the rental income he received from the parties' trailer home during their separation. Mr. Wells first argues that the rental income collected from April 2007 through

January 2008, did not exist at the time of the filing of the complaint; therefore, he argues that the money collected was not a marital asset subject to division. Further Mr. Wells submits that the trial court erred because the funds were used for payment on the parties' mortgage on the Marital Residence.

The trial court found that Mr. Wells had collected $11,000 in rent from the parties' trailer home during the parties' separation and during the divorce proceedings. The trial court classified this as a marital asset and credited the entire amount of the $11,000 to Mr. Wells's portion of marital assets. It is undisputed that the trailer home is a marital asset. Accordingly, any income received from it would also be a marital asset. Tenn. Code. Ann §36-4-121(b)(1)(B) (2002). It is undisputed that Mr. Wells received the rent during the parties' separation and divorce.

First, we address the rent received prior to the filing of the complaint. If the rent collected still existed at the time of the filing of the complaint, pursuant to the statutory provisions, it would be a marital asset subject to equitable division. Tenn. Code Ann. § 36-4-121(b) (2002). Because the trial court classified the entire rental income as a marital asset, we must infer that the trial court found that Mr. Wells still maintained the funds he collected as rent on the parties' trailer home at the time of filing the complaint, and that the money had not been paid towards the parties' mortgage. Mr. Wells failed to present any evidence, other than his own testimony, as to when the money was spent and/or for what purpose the money was used. He admitted receiving all of the money and also admitted not sharing any portion of the money with Mrs. Wells. The trial court made an implicit finding as to the credibility of Mr. Wells on this issue and no clear and convincing evidence to rebut this finding has been submitted. Accordingly, we find that the trial court did not err in classifying the money collected as rent on the parties' trailer home during the parties' separation as a marital asset.

Next we address the rent collected after the filing of the complaint. As recently held by the Tennessee Supreme Court, "marital property includes all property owned as of the date of filing of the complaint *or* acquired up to the date of the final divorce hearing." ***Ball v. Ball***, - - S.W.3d - -, No. E2007-02220-SC-R11-CV, 2010 WL 143854, *4 (Tenn. January 14, 2010)(emphasis added). Based on this holding, the rent collected by Mr. Wells after the filing of the complaint is a marital asset, as it was acquired before the date of the final hearing. However, Mr. Wells contends that this marital asset did not exist at the time of the final divorce hearing as it was paid towards the mortgage on the Marital Residence by agreement of the parties. Whether the money existed at the time of the final hearing is irrelevant because it was actually acquired before the final hearing as required by the statute. Additionally, Mrs. Wells denies that any such agreement existed. Moreover, Mr. Wells was

ordered by the trial court to pay the mortgage himself on the Marital Residence during the pendency of the divorce proceedings. Mr. Wells failed to present any evidence at trial, other than his testimony, to show that he used the money collected from the rent to pay the mortgage on the Marital Residence. The rent was income from a marital asset and was acquired before the date of the final hearing. As such, the trial court properly classified it as a marital asset. Consequently, we find that the evidence does not preponderate against the trial court's finding that the rent collected after the filing of the complaint was a marital asset subject to division.

*Gifts*

Mr. Wells next submits that the trial court erred in classifying certain gifts he made to third parties as a marital asset. In its division of assets, the trial court credited each party's portion of the marital estate with money he or she had given to a third party. Mr. Wells was credited with $2,500 that he gave to Stephanie Smith ("Ms. Smith"), a women he claims is his daughter, in 2007, and $1,000 he gave to Barbara Daley ("Ms. Daley"), the daughter of a woman that Mr. Wells claims raised him, on January 13, 2008.[1] The trial court also credited Mrs. Wells with $2,000 that she gave to her sister. The parties do not dispute that all amounts credited came from marital funds.

Mr. Wells contends that the trial court erred in crediting him with the gifts given to Ms. Smith, as he gave that money to her prior to the filing of the divorce. Mr. Wells does not dispute that the funds used for this gift came from the joint account, into which the parties had placed the money received from the sale of the Cordova home. Mr. Wells is correct in his assertion that, because the asset was not owned by the parties at the time of the filing of the complaint, it should not be considered a marital asset subject to division. Tenn. Code. Ann. § 36-4-121(b)(1)(A)(2002); *see also* **Flannary v. Flannary**, 181 S.W.3d 647, 650 (Tenn. 2003). However, because the trial court did include the gifts in Mr. Wells portion of the marital estate, the trial court must have concluded that Mr. Wells had dissipated marital assets. Tenn. Code. Ann. § 36-4-121(c)(5) (2002).

In making an equitable distribution, the trial court may consider whether a party has

---

[1]We note that neither party provided the court with the date the gift to Ms. Daley was made, nor did either party provide a citation to the record as to where we could find this information. However, upon our independent review of the record, we found a copy of the check given to Ms. Daley attached to Mr. Wells Rule 1006 summary, which is Exhibit 12 of evidence presented at trial and located in Volume Five of the record.

dissipated marital or separate assets. Tenn. Code. Ann. § 36-4-121(c)(5) (2002); *see also* ***Ball v. Ball,*** 2010 WL 143854, at \*5. "Dissipation of marital property occurs when one spouse uses marital property, frivolously and without justification, for a purpose unrelated to the marriage and at a time when the marriage is breaking down." ***Altman v. Altman***, 181 S.W.3d 676, 681-82 (Tenn. Ct. App. 2005)(citations omitted). To determine whether dissipation has occurred, the trial court must consider the facts of the case. ***Ball***, 2010 WL 143854 at \*5. The spouse claiming dissipation bears both the burden of persuasion and the burden of production. ***Id.*** After the spouse has established a *prima facia* case of dissipation, the burden shifts to the other spouse to demonstrate that the expenditure was not inappropriate. ***Altman***, 181 S.W.3d at 682 (citations omitted). In determining whether dissipation has occurred, the trial court must distinguish between dissipation and discretionary spending. ***Ball***, 2010 WL 143854 at \*5. Discretionary spending is spending that is typical of the parties' spending during the marriage. ***Id.*** The trial court should consider the following factors when determining whether a particular expenditure was dissipation: "(1) whether the expenditure benefitted the marriage or was made for a purpose unrelated to the marriage; (2) whether the expenditure or transaction occurred when the parties were experiencing marital difficulties or contemplating divorce; (3) whether the expenditure was excessive or *de minimis*; and (4) whether the dissipating party intended to hide, deplete, or divert a marital asset." ***Altman,*** 181 S.W.3d at 682 (citations omitted).

After reviewing the record, we find that it supports the trial court's finding that Mr. Wells dissipated marital assets by making gifts totaling $2,500 to Ms. Smith. Mr. Wells gave Ms. Smith the funds at a time when the parties were having marital difficulties. When the gifts were made, Mr. Wells and Mrs. Wells had separated and Mrs. Wells was living with her parents. Mr. Wells admitted that he did not have Mrs. Wells' permission to give Ms. Smith this money, nor did he tell her he was going to do so. Mr. Wells claims that he is the biological father of Ms. Smith. Mrs. Wells disputes that he is the father. Mr. Wells admitted that he has never taken a paternity test to determine whether he is, in fact, Ms. Smith's father. He admitted that he has never paid child support for Ms. Smith, nor given her money previously. Based on the record, this Court finds that Mr. Wells gifts to Ms. Smith were dissipation. Accordingly, we find that the trial court did not err in crediting Mr. Wells with the $2,500 in gifts he made to Ms. Smith using marital funds.

With respect to the gift given to Ms. Daley, we find that the trial court did not err in classifying this gift as marital property and crediting it to Mr. Wells. Any property owned at the time of the filing of the complaint is marital property subject to division by the trial court. Tenn. Code. Ann. § 36-4-121(b)(1)(A) (2002). Mr. Wells admits that the funds he gave Ms. Daley came from the savings account, into which the parties had placed the money they received from the sale of the Cordova home. The record shows that Mr. Wells did not

give Ms. Daley this money until January, 13, 2008, after the filing of the complaint. Accordingly, the trial court properly classified this gift as marital property and credited it to Mr. Wells.

**Equitable Division**

Mr. Wells also submits that the trial court erred in making an equitable division of the parties' marital property. First, Mr. Wells contends that the trial court erred in classifying certain assets as marital and, therefore, the distribution is inequitable. Finding that the trial court did not err in its classification of the parties assets, as discussed above, we find this contention to be without merit. Second, Mr. Wells contends that "the [trial] court's distribution of 57% of the assets to the Mrs. Wells and 43% to Mr. Wells is inequitable." On appeal, Mr. Wells proposes that the division should be: forty-nine percent of the marital estate to Mr. Wells and fifty-one percent of the marital estate to Mrs. Wells, with Mrs. Wells receiving approximately $2,300 more than Mr. Wells. This proposal includes reclassification of the Arkansas property as Mr. Wells' separate property, leaving him with separate property of $28, 825.00 (a request this Court has already rejected), and Mrs. Wells with separate property of $987.63

Dividing a marital estate is not a mechanical process; the goal is to fashion an equitable remedy considering the non-exclusive factors set forth in Tenn. Code. Ann § 36-4-121(c):

1. The duration of the marriage;

2. The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

3. The tangible or intangible contributions by one party to the education, training or increased earning power of the other party;

4. The relative ability of each party for future acquisition of capital assets and income;

5. The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker,

-13-

wage earner or parent with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his role;

6. The value of the separate property of each party;

7. The estate of each party at the time of the marriage;

8. The economic circumstances of each party at the time of the marriage;

9. The tax consequences to each party associated with the reasonably foreseeable sale of the asset and other reasonably foreseeable expenses associated with the asset;

10. The amount of social security benefits available to each spouse;

11. And such other factors as are necessary to consider the equities between the parties.

Trial courts have "wide latitude in fashioning an equitable division of marital property." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). The division of marital property is rooted in equity, and a division of marital property is not rendered inequitable merely because it is not precisely equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988) or because each party does not receive a share or portion of each marital asset. *Cohen*, 937 S.W.2d at 833 (citing *Brown v. Brown*, 913 S.W2d 163, 168 (Tenn. Ct. App. 1994)). We will defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or not supported by a preponderance of the evidence. *Woods v. Woods*, No. M2002-01736-COA-RS-CV, 2005 WL 1651787, * 4(Tenn. Ct. App. July 12, 2005).

In the Final Decree, the trial court states that it considered all of the above listed factors. Also, when making its division from the bench, the trial court specifically stated that it considered all of the factors and found:

The parties were married October 15, 1994, almost fifteen years. A relatively long marriage. The age of both the - - both the parties is forty-five. Mrs. Wells is about to turn forty-six in a week or so. Both are in good physical and mental health. Both are employable and have good vocational skills and earning

capacity. The husband's earning capacity is more than the wife. In fact it's more than twice that of the wife. The Court has considered the relative ability of each party to acquire future capital assets and income. And, again, Mr. Wells' ability is greater than that of Mrs. Wells because of his greater earning capacity. The parties have made equal contributions to the acquisition of marital property as homemaker, wage earner, or parent. The parties have very little separate property. They had very little estate at the time they married in 1994. The Court has also considered the amount of Social Security available to the Wife.

In the final decree, the trial court awarded Mrs. Wells fifty-six percent of the marital estate or $122,091.81, and awarded the Mr. Wells forty-four percent of the marital estate or $95,698.34. In denying Mr. Wells' motion to alter or amend, the trial court recognized that it had made a mathematical error in calculating the marital estate and the portion each party was awarded. It then corrected this error and stated that Mrs. Wells' award of the marital estate was $126,275.57, equaling 56.9% of the marital estate, and Mr. Wells' award was $95,698.34, or 43.1% of the marital estate.

Mr. Wells cites to *Woods v. Woods*, No. M2002-01736-COA-RS-CV, 2005 WL 1651787, * 4 (Tenn. Ct. App. July 12, 2005), to support his contention that the trial court's division is inequitable. Because of factual differences, *Woods* is not helpful to this Court in the instant case. In fact, in may even be read to support the trial court's division in this case as there was a much higher difference in the division of property between the parties in *Woods*. The fact that the parties in *Woods* were married twelve years is the only fact comparable to this case. *Id.* at *9. In *Woods*, this Court found that the trial court's division of marital property was inequitable and re-divided the property to award the wife sixty-six percent of the property and the husband thirty-four percent of the property. *Id.* The wife in *Woods* was found to have contributed a substantial amount of separate assets to purchase the parties' marital home. *Id.* Further, this Court found that, while the husband in *Woods* was earning more at the time of divorce, the wife had two bachelor's degrees while the husband had an associate's degree, and the wife was capable of earning much more than she was at the time of the divorce. *Id.* Further, this Court considered the fact that the wife in *Woods* would be the primary residential parent. *Id.* The facts between *Woods* and this case are simply not comparable.

We have reviewed the record and find that the trial court did not err in making an

equitable distribution. The evidence does not preponderate against the trial court's factual findings. The trial court's division of the marital estate granting Mrs. Wells approximately fourteen percent more of the marital estate is not inconsistent with the factors in Tenn. Code. Ann. § 36-4-121(c). This is especially true considering the fact that Mr. Wells has an earning capacity twice that of Mrs. Wells and, therefore, has a greater ability to acquire future assets, and that the parties made equal contributions to the marital estate. Consequently, we find that the trial court's division of the marital estate is equitable.

## Imputed Income

Mrs. Wells submits one issue for our review. She contends that the trial court erred in imputing income to her in the amount of $27,000 a year. When imputing income to Mrs. Wells, the trial court specifically stated that she had not done enough to find a job, finding that she went months at a time without making any efforts whatsoever, and only made one personal appearance when seeking a job. Clearly the trial court found that Mrs. Wells was willfully and voluntarily unemployed and imputed an income reflecting her earning capacity.

When a trial court finds that a person is unemployed for the purposes of child support, the trial court may impute an income to that person reflecting his or her income potential or earning capacity. Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(3)(a)(2)(ii)(II). The determination of whether a person is willfully or voluntarily unemployed is a question of fact, which we review *de novo* with a presumption of correctness. ***Reed v. Steadham***, No. E2009-00018-COA-R3-CV, 2009 WL 3295123, *2 (Tenn. Ct. App. Oct. 14, 2009). Once the trial court determines that a parent is willfully and voluntarily underemployed or unemployed, it must impute an income to that parent reflecting his or her earning capacity, considering the parent's past and present employment, and education and training. ***Willis v. Willis***, 62 S.W.3d 735, 739 (Tenn. Ct. App. 2001); *see also* Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(3)(a)(2)(ii)(II).

We will first review the trial court's finding that Mrs. Wells was voluntarily unemployed. Mrs. Wells testified that since the separation she has looked for a job in her field. She introduced into evidence a folder that contained proof of all of her job search efforts from 2006 through the date of the trial. This folder is in the record and shows several instances, between 2006 and 2009, where Mrs. Wells went for months without applying for a job. From her records, this Court can only find two instances in three years where Mrs. Wells personally appeared to apply for a job. The majority of her job search appears to have been conducted by simply mailing, faxing or emailing resumes, with no indication of any

follow-up action by Mrs. Wells. Mrs. Wells testified that, from April 21, 2008 through October 2008, she only submitted two job applications; in November 2008, she only submitted one application, and in December 2008, she submitted three applications. She testified that she would look in the classifieds or online, and that she went to several retail stores the week of the trial. She admitted that she had not applied at any temporary agencies. She testified that, despite her efforts, she has not obtained employment. Mrs. Wells testified that she had taken a class in medical coding in September 2008, but had not taken the test to become certified as of the date of the trial. Mrs. Wells admitted that she had not applied for any jobs in the medical coding field, even though certification was not required. After reviewing the record, we find that the evidence does not preponderate against the trial court's finding that Mrs. Wells was willfully and voluntarily unemployed.

Next we will review the trial court's determination that Mrs. Wells has an earning capacity of $27,000 a year. In making this determination, the trial court is to consider the parent's past and present employment, and education and training. *Willis*, 62 S.W.3d at 735; *see also* Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(3)(a)(2)(ii)(II). The determination of imputed income is a question of fact, *Willis*, 62 S.W.3d at 739, which we review *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d). At trial, Mrs. Wells testified on direct examination that she last worked in April of 2004 as an administrative assistant; however, on cross examination, she testified that she last worked in June of 2004. She presented her Social Security statement reflecting her work history. It shows that, in 2001, she earned $27,189, which is the highest yearly earnings shown; in 2002, she earned $24,519; in 2003, she earned $25,171; in 2004 she earned $15,298. [2]

After reviewing the record, we find that the evidence does not preponderate against the trial court's finding that Mrs. Wells has the ability to earn $27,000 a year. She has earned this amount previously. Further, when she last worked full time (which was at the most for six months of the year) she earned $15,298 that year. Since that time, Mrs. Wells has taken an eighty hour medical coding certification class, which should at least enable her to maintain the same earning capacity she previously had, if not increase her earning capacity. Consequently, we affirm the trial court's finding that Mrs. Wells is willfully and voluntarily unemployed and his decision to impute income to Mrs. Wells in the amount of $27,000 a year.

---

[2] We note that in his brief, Mr. Wells refers to evidence that is not in the record; specifically, Mrs. Wells' deposition. Therefore, this Court did not consider this evidence when making its determination that the trial court did not err.

## Conclusion

For the foregoing reasons we affirm the decision of the trial court. On appeal, Mrs. Wells requests that this Court award her attorney fees for this appeal. Using our discretion, we decline to do so. Costs of this appeal are taxed one-half to Appellant, Mark Wells, and his surety, and one-half to Joanne Wells, for which execution may issue if necessary.

_____

J. STEVEN STAFFORD, J.