**Marn Suzanne LARSEN–BALL**

v.

**William Gordon BALL.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 4, 2009 Session.

Jan. 14, 2010.

Thomas C. Jessee, Johnson City, Tennessee, and Thomas S. Scott, Jr. and William Gordon Ball, Knoxville, Tennessee, for the appellant, William Gordon Ball.

Valerie T. Corder, Memphis, Tennessee, for the appellee, Marn Suzanne Larsen–Ball.

## OPINION

JANICE M. HOLDER, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK and WILLIAM C. KOCH, JR., JJ., and DONALD P. HARRIS, SP.J., joined.

This case requires us to construe Tennessee Code Annotated section 36–4–121(b)(1)(A) to determine whether a $17 million attorney fee acquired by Husband after Wife filed a complaint for divorce but before the final divorce hearing is "marital property" and therefore subject to equitable division. The trial court classified the attorney fee as marital property and awarded approximately sixty percent of the marital estate to Husband and forty percent to Wife. The Court of Appeals affirmed the trial court's classification of the attorney fee and its division of the marital estate. We hold that the attorney fee is marital property and that the evidence does not preponderate against the trial court's division of the marital estate. We therefore affirm the judgment of the Court of Appeals.

### Facts and Procedural History

Marn Suzanne Larsen–Ball and William Gordon Ball were married on August 12, 1989, in Knox County, Tennessee. Prior to the marriage, Ms. Ball worked in retail

management. After the parties were married, she became a stay-at-home mother to the parties' two children, born April 22, 1990, and April 26, 1991. At the time of the marriage, Mr. Ball, a former Assistant United States Attorney, had been practicing law for fifteen years and was handling criminal defense and personal injury cases. Mr. Ball began to specialize in class action lawsuits as the marriage progressed. As a result of Mr. Ball's class action practice, the parties amassed a sizable estate, including large bank accounts, vehicles, vacation properties, and a private plane.

On January 31, 2006, Ms. Ball filed a complaint for divorce against Mr. Ball in the Chancery Court for Knox County. Seven months later, on August 31, 2006, Mr. Ball received a $17 million attorney fee from a class action lawsuit in South Carolina that was the culmination of several years' work. Ms. Ball filed a motion for partial summary judgment requesting that the trial court classify the attorney fee as marital property subject to equitable division under Tennessee Code Annotated section 36–4–121(b)(1)(A) (2005).

The trial court granted Ms. Ball's motion for partial summary judgment and ruled that the $17 million attorney fee is marital property. At a hearing on August 28 and 29, 2007, the parties stipulated that Ms. Ball was entitled to a divorce from Mr. Ball on the grounds of inappropriate marital conduct and presented proof concerning the division of the marital estate. In an order dated September 3, 2007, the trial court valued the marital property at $29,650,000, which included the $17 million attorney fee, and awarded approximately sixty percent of the marital estate to Mr. Ball and forty percent to Ms. Ball. The trial court entered a final judgment on September 26, 2007.

Both parties filed timely notices of appeal. Mr. Ball appealed the trial court's classification of the attorney fee as marital property, and both parties appealed the trial court's division of the marital estate. The Court of Appeals held that the attorney fee was marital property and affirmed the trial court's division of the marital estate.

We granted Mr. Ball's and Ms. Ball's applications for permission to appeal.

## Analysis

■■■ "Tennessee is a 'dual property' state because its domestic relations law recognizes both 'marital property' and 'separate property.'" *Snodgrass v. Snodgrass,* 295 S.W.3d 240, 246 (Tenn.2009); *see generally* Tenn.Code Ann. § 36–4–121. Thus, before equitably dividing the marital estate, the trial court must identify all of the assets possessed by the divorcing parties as either separate or marital. *Snodgrass,* 295 S.W.3d at 246. Separate property is not part of the marital estate and is therefore not subject to division. *See Cutsinger v. Cutsinger,* 917 S.W.2d 238, 241 (Tenn.Ct.App.1995). In contrast, marital property must be divided equitably between the parties based on the relevant factors enumerated in Tennessee Code Annotated section 36–4–121(c) without regard to fault on the part of either party. Tenn. Code Ann. § 36–4–121(a)(1). Section 36–4–121(a)(1) requires an *equitable* division of marital property, not an *equal* division. *Robertson v. Robertson,* 76 S.W.3d 337, 341 (Tenn.2002).

### I. Classification of the $17 Million Attorney Fee

■■■ We granted appeal to address whether the $17 million attorney fee acquired after Ms. Ball filed the complaint for divorce but before the final divorce hearing is marital property under Tennessee Code Annotated section 36–4–121(b)(1)(A) and therefore subject to equi-

table division. The construction of a statute and its application to the facts of a case are questions of law, which we review de novo with no presumption of correctness afforded to the lower court's conclusions. *Lavin v. Jordon,* 16 S.W.3d 362, 364 (Tenn.2000).

■■ Our role in construing a statute "is to ascertain and give effect to the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope." *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995). In fulfilling this role, we presume that every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General Assembly is not violated by so doing. *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn.2005).

Tennessee Code Annotated section 36–4–121(b)(1)(A) provides the following definition of marital property, in pertinent part:

> all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing *and* owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

(emphasis added).

■ We presume that the General Assembly used each word in the statute deliberately. *Bryant v. Genco Stamping & Mfg. Co.,* 33 S.W.3d 761, 765 (Tenn.2000). Consistent with this presumption, the inclusion of the word "and" would impose two distinct requirements for an asset to constitute marital property: the asset must have been owned "as of the date of filing of a complaint for divorce" *and* acquired "up to the date of the final divorce hearing." Applying this interpretation, the $17 million attorney fee would not be marital property because Mr. Ball did not own the fee when the complaint for divorce was filed even though he acquired the fee prior to the final divorce hearing.

We observe that interpreting this section to require that an asset be both owned "as of the date of filing of a complaint for divorce" *and* acquired "up to the date of the final divorce hearing" renders the latter-quoted phrase superfluous. Property that is owned on the date of filing was necessarily acquired before the date of the final divorce hearing because the date of filing will always precede the date of the final divorce hearing.

Although statutory phrases separated by "and" are usually interpreted in the conjunctive we have recognized that "and" can be construed in the disjunctive when such a construction is necessary to further the intent of the legislature. *Stewart v. State,* 33 S.W.3d 785, 792 (Tenn.2000) (citing *City of Knoxville v. Gervin,* 169 Tenn. 532, 89 S.W.2d 348, 352 (1936) ("The word 'and' is frequently construed as meaning 'or.'")). When we apply the disjunctive in this case, the definition of marital property will be read to include all property owned as of the date of filing of the complaint for divorce *or* acquired up to the date of the final divorce hearing.

At first blush, this construction would appear to render inoperative the language requiring that property be "owned ... as of the date of filing of a complaint for divorce." In *Flannary v. Flannary* we clarified, however, that the purpose of the date of filing in the definition of marital property is to exclude property that was once owned by the parties but is owned by

neither party at the time the complaint for divorce is filed.[1] *See* 121 S.W.3d 647, 650 (Tenn.2003). Such property is not subject to classification or distribution because a court cannot classify or distribute what is "not there." *See id.* at 649–50. Prior to filing the complaint for divorce, Mr. Flannary withdrew cash from a savings account and placed the cash in his bedroom drawer. At trial, he testified that when he went to redeposit the cash, it was gone. Neither party knew what happened to the cash. Significantly, neither party disputed that the cash was missing before Mr. Flannary filed for divorce. Accordingly, we held that the cash was not marital property under section 36–4–121(b)(1)(A).

Furthermore, applying the disjunctive permits us to construe section 36–4–121(b)(1)(A) "so that its component parts are consistent and reasonable." *State v. Odom,* 928 S.W.2d 18, 30 (Tenn.1996). The plain meaning of "during the course of the marriage," for example, is the time period between marriage and divorce. *See Alford v. Alford,* 120 S.W.3d 810, 813–14 (Tenn.2003). The inclusion of this language and the multiple references to the "final divorce hearing" suggest that the General Assembly intended to permit parties to acquire marital property as late as the date of the final divorce hearing. We observe, moreover, that under section 36–4–121(b)(1)(A) marital property includes "any property to which a right was acquired up to the date of the final divorce hearing." *See Cohen v. Cohen,* 937 S.W.2d 823, 828 (Tenn.1996) (holding that unvested retirement benefits accruing during the marriage are marital property). It would be incongruous to hold that a right to property acquired after the date of filing of the complaint for divorce is marital property but that actual property acquired after the date of filing is not marital property.

Finally, this interpretation comports with our decision in *Alford v. Alford,* in which we addressed whether debt incurred during the parties' ten-year separation prior to the filing of the complaint for divorce was marital or separate debt. 120 S.W.3d 810. Although marital debt is not defined by statute, it is subject to equitable division in the same manner as marital property. *Id.* at 813. We therefore held in *Alford* that marital debt should be defined to correspond to the definition of marital property provided in section 36–4–121(b)(1)(A). After quoting the definition of marital property, we stated that, consistent with that definition, " 'marital debts' are all debts incurred by either or both spouses during the course of the marriage *up to the date of the final divorce hearing."* *Id.* (emphasis added).

Based on the foregoing analysis, we hold that marital property includes all property owned as of the date of filing of the complaint for divorce or acquired up to the date of the final divorce hearing. In the instant case, Mr. Ball acquired the $17 million attorney fee on August 31, 2006, almost a full year before the final divorce hearing on August 28 and 29, 2007. We therefore affirm the determinations of the trial court and the Court of Appeals that the attorney fee is marital property under Tennessee Code Annotated section 36–4–121(b)(1)(A) and therefore subject to equitable division. We also affirm the determination of the Court of Appeals that the attorney fee is not separate property under Tennessee Code Annotated section 36–

1. The date of filing of the complaint for divorce also is significant because it triggers an automatic injunction that limits the parties' use of marital property throughout the pendency of their divorce proceedings. *See* Tenn. Code Ann. § 36–4–106(d)(1) (Supp.2009).

4–121(b)(2).[2] This determination provides an additional basis on which to conclude that the fee is marital property. As the Court of Appeals accurately noted, property is either marital or separate—there is no third category of property under Tennessee's domestic relations law.

## II. Equitable Division of the Marital Estate

After classifying the divorcing parties' assets as either separate or marital, the trial court must divide the marital estate equitably by weighing the relevant factors enumerated in Tennessee Code Annotated section 36–4–121(c). We give great weight to the trial court's division of marital property and "'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Keyt v. Keyt,* 244 S.W.3d 321, 327 (Tenn.2007) (quoting *Herrera v. Herrera,* 944 S.W.2d 379, 389 (Tenn.Ct.App.1996)).

Tennessee Code Annotated section 36–4–121(c) provides that in making an equitable division of marital property, the trial court shall consider all relevant factors.[3] Because trial courts have broad discretion in dividing the marital estate, the division of marital property is not a mechanical process. *Flannary,* 121 S.W.3d at 650. Rather, the trial court should weigh the most relevant factors in light of the facts of each case. *Tate v. Tate,* 138 S.W.3d 872, 875 (Tenn.Ct.App. 2003). We review the trial court's findings of fact de novo with a presumption of

**2.** Tennessee Code Annotated section 36–4–121(b)(2) defines separate property as follows:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise, or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of the property.

**3.** Those factors include the following:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn.Code Ann. § 36–4–121(c).

correctness and honor those findings unless the evidence preponderates to the contrary. Tenn. R.App. P. 13(d); *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008). When issues of credibility and weight of testimony are involved, we afford considerable deference to the trial court's findings of fact. *Keyt*, 244 S.W.3d at 327.

In this case, the trial court stated in its order that "[t]he factors to be considered ... in determining an equitable division of the parties' marital properties are controlled by [s]ection 36–4–121." Although the trial court did not track the exact language of the statutory factors, its findings clearly reflect its consideration of the factors.[4] The trial court found, for example, that the Balls' marriage lasted eighteen years. It also noted that Ms. Ball was fifty-three years old and healthy at the time of divorce but that Mr. Ball had recently suffered two heart attacks and had an operation to place stints. The trial court also observed that with no college degree and limited skills Ms. Ball was unlikely to earn more than $35,000 per year and that Mr. Ball "possesses the greater opportunity for future acquisition of capital assets and income." The trial court further stated that Mr. Ball's financial contributions enabled the parties to "amass a substantial estate" but that Ms. Ball's role as homemaker afforded Mr. Ball the "liberty and opportunity to pursue and acquire this substantial estate." Finally, the trial court noted that Mr. Ball had a thriving law practice at the time of the marriage but that Ms. Ball had virtually no assets.

Despite these findings, Ms. Ball argues on appeal that the trial court disregarded evidence concerning the fifth factor, specifically the responsibility of each party for the dissipation of marital property, and that, consequently, the division of the estate is not equitable. *See* Tenn.Code Ann. 36–4–121(c)(5). We disagree.

 Whether dissipation has occurred depends on the facts of the particular case. 24 Am.Jur.2d Divorce and Separation § 526 (2009). The party alleging dissipation carries the initial burden of production and the burden of persuasion at trial. *Burden v. Burden*, 250 S.W.3d 899, 919 (Tenn.Ct.App.2007), *perm. to app. denied*, (Tenn. Feb. 25, 2008). Dissipation of marital property occurs when one spouse wastes marital property and thereby reduces the marital property available for equitable distribution. *See Altman v. Altman*, 181 S.W.3d 676, 681–82 (Tenn.Ct. App.2005), *perm. to app. denied*, (Tenn. Oct. 31, 2005). Dissipation "typically refers to the use of funds after a marriage is irretrievably broken," *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn.2006), is made for a purpose unrelated to the marriage, and is often intended to "hide, deplete, or divert" marital property. *Altman*, 181 S.W.3d at 681–82. In determining whether dissipation has occurred, trial courts must distinguish between dissipation and discretionary spending. *Burden*, 250 S.W.3d at 919–20; 24 Am.Jur.2d Divorce and Separation § 526 (2009). Discretionary spending might be ill-advised, but unlike dissipation, discretionary spending is typical of the parties' expenditures throughout the course of the marriage. *Burden*, 250 S.W.3d at 919–20.

Ms. Ball alleges that Mr. Ball dissipated the marital estate through the following expenditures and transactions:

- bonuses of $1,000,000 to an employee, $300,000 to a colleague, and $100,000 to an employee and paramour;

---

4. We encourage trial courts to make specific findings of fact with respect to each statutory factor enumerated in Tennessee Code Annotated section 36–4–121(c) to aid in the disposition of cases on appeal.

- $143,584 to purchase a Mercedes convertible and an unspecified amount to lease a Mercedes coupe;
- $500,000 to pilot and fuel the parties' plane and $500,000 for repairs to the plane;
- $2,147,838 to purchase two condominiums in Destin, Florida, and the purchase and sale at an alleged loss of a condominium in Knoxville, Tennessee;
- $248,000 to redecorate various properties; and
- $55,000 in cash to his paramours in addition to an unspecified amount for his paramours' entertainment, meals, trips, clothes, and rent.

In its order, the trial court observed that "both parties enjoy a lavish lifestyle and spend money on a grand scale. During the marriage, [Ms. Ball] has spent extensive sums of money each month, and [Mr. Ball] has not been Spartan in his life style." In our view, this observation suggests that the trial court was not persuaded by Ms. Ball's allegations of dissipation because those amounts were typical of the parties' expenditures throughout the course of their marriage and therefore constituted discretionary spending. Our review of the evidence does not preponderate against this finding.

Evidence was presented at trial that the parties previously spent large sums of money to purchase properties and vehicles and to redecorate their various properties. Likewise, Mr. Ball testified that he purchased the plane in 2001, five years before the parties' separation, for use in his nationwide law practice and spent money to pilot, fuel, and maintain the plane throughout the remainder of the parties' marriage. The record is devoid, moreover, of evidence tending to show that Mr. Ball spent funds on these items and services for purposes wholly unrelated to the marriage or in an attempt to hide, deplete, or divert marital property.

Mr. Ball testified that the bonuses to his employees and colleague were compensation for services rendered over periods of years and that, in his opinion, the amount of the bonuses was reasonable. It would have been reasonable for the trial court to accredit this testimony given that the bonuses were paid shortly after Mr. Ball's receipt of the $17 million attorney fee. Although the more than $55,000 that Mr. Ball spent on his paramours clearly constitutes dissipation, there is nothing in the record to indicate that the trial court did not consider this evidence. Even if we assume that the trial court disregarded these expenditures, its division of approximately sixty percent of the estate to Mr. Ball and forty percent to Ms. Ball still would be well within its wide range of discretion in light of the multimillion dollar value of the marital property at issue in this case.

In conclusion, it is apparent from the trial court's order that the trial court considered the relevant factors enumerated in Tennessee Code Annotated section 36–4–121(c) when equitably dividing the marital estate. In our view, the trial court's failure to explicitly mention "dissipation" taken together with its observation that the parties spent money on a "grand scale" during their marriage suggests that the trial court was not persuaded by Ms. Ball's allegations of dissipation. Moreover, we have thoroughly reviewed the record, and the evidence does not preponderate against this implicit finding. Nor does the evidence preponderate against the remaining findings of fact on which the trial court based its division of approximately sixty percent of the marital estate to Mr. Ball

and forty percent to Ms. Ball.[5]

## Conclusion

In light of the foregoing analysis, we affirm the judgment of the Court of Appeals affirming the trial court's equitable division of the marital estate and its inclusion of Mr. Ball's $17 million attorney fee in such division. We decline to hold that Mr. Ball's appeal is frivolous. Costs of this appeal are assessed against the appellant, William Gordon Ball, and his surety, for which execution shall issue if necessary.

---

5. On August 14, 2009, Ms. Ball filed a Motion to Consider Post–Judgment Facts pursuant to Tennessee Rule of Appellate Procedure 14, requesting that we consider that Mr. Ball filed a class action lawsuit in January 2009. Although appellate courts generally consider only those facts presented in the trial court, Rule 14 permits consideration of post-judgment facts that are "unrelated to the merits," "not genuinely disputed," and "necessary to keep the record up to date." Tenn. R.App. P. 14, advisory comm'n cmt. Although Mr. Ball does not dispute that he filed a class action lawsuit in January 2009, this fact can hardly be characterized as "unrelated to the merits" or "necessary to keep the record up to date." Ms. Ball's motion is therefore denied.