IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 14, 2010 Session

IN RE ISAIAH S.

Appeal from the Juvenile Court for Williamson County
No. 24123     Denise Andre, Judge

No. M2009-02114-COA-R3-JV - Filed August 11, 2010

Father sought to become the primary residential parent due to the failure of Mother to comply with the parenting plan. The trial court designated Father as the primary residential parent. Mother appealed. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Jonathan Lynn Miley, Nashville, Tennessee, for the appellant, Jelisha J.

Deana C. Hood, Franklin, Tennessee, for the appellee, Abner S. III.

OPINION

Abner S. ("Father") and Jelisha J. ("Mother") were never married to each other but are the parents of Isaiah S., born in 2002. The juvenile court designated Mother as the primary residential parent and approved a permanent parenting plan in January 2004. In December 2007, the juvenile court referee granted Father's petition to change custody, but Father eventually non-suited the petition.

A new petition was filed by Father in January 2009, and Mother, in turn, filed a petition for contempt and modification of child support. A final hearing was held on August 17, 2009. The court found that a material change of circumstances had occurred and that it was in the best interest of Isaiah for Father to become the primary residential parent. A new parenting plan was approved by the court. Mother appealed.

## Standard of Review

This court reviews the findings of fact of the trial court de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law are reviewed de novo without a presumption of correctness. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). "When issues of credibility and weight of testimony are involved, we afford considerable deference to the trial court's findings of fact." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010).

## Analysis

Father's petition claims that a material change of circumstances exists "in that Mother consistently attempts to alienate the child from the Father and prevent the minor child from spending time with the Father." He further maintains that a material change in circumstances exists "in that joint parenting and decision making is not working," because Mother does not consult Father or Mother unilaterally changes their joint decisions. Mother denies that a material change of circumstances has occurred.

The first step in determining whether Father should become the primary residential parent is deciding whether there has been a material change in circumstances. Tenn. Code Ann. § 36-6-101(a)(2)(B) states:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

There is no absolute test for determining whether such a change has occurred.

> While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered,"

and the change "is one that affects the child's well-being in a meaningful way."

*Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn. 2002) (quoting *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002)).

The trial court reviewed the litigious history of the parents and found that:

Father has been forced to be involved in unnecessary litigation: (1) to receive his court-ordered 30 day summer visitation as designated by the parenting plan and denied by Mother in 2004; (2) to receive his court-ordered Spring Break visitation as designated by the parenting plan and denied by Mother in 2005; (3) to obtain court intervention in order to allow the minor child to play football as previously agreed upon but ultimately refused by Mother in 2007; (4) and now to change custody due to Mother's continual pattern of failing to adhere to the joint decision making process ordered in the parenting plan, her interfering with Father's court-ordered visitation in 2008, and Mother exposing the minor child on a regular and weekly basis to her serious involvement with a convicted felon on probation.

The trial court also found that the past episodes of litigation were "primarily due to Mother's pattern of deliberately interfering with Father's court-ordered visitation rights and Mother's refusal to adhere to the parenting plan."

The current action between the parties is based on a couple of instances. In 2007 Mother and Father jointly agreed, pursuant to the parenting plan, to enroll Isaiah in Trinity Elementary. Mother unilaterally enrolled the child in another school without informing Father. The trial court found Mother's reason for doing so "not to be credible."

The final straw precipitating the current action has its origin in Father's 2008 Christmas vacation. The parenting plan grants Father visitation with Isaiah one week prior to Christmas Day in even-numbered years. In 2006 Father began the visitation on December 18th. In 2008 Mother denied Father visitation until December 19th with no discussions of what constituted "a week prior to Christmas Day." The trial court viewed these instances as part of "Mother's pattern of denying Father his court-ordered time," and a reflection of Mother's "unwillingness to co-parent effectively and her desire to manipulate the parenting time in her favor."

Under Tenn. Code Ann. § 36-6-101(a)(1)(B), "failures to adhere to the parenting plan or an order of custody and visitation" can constitute a material change of circumstances. The

trial court found that Mother's pattern of failing to adhere to the mandates of the parenting plan was a material change of circumstance.[1] There is ample support in the record for this conclusion and it is affirmed.

The second step in assessing whether the primary residential parent should be changed is the best interest analysis, which uses the factors found in Tenn. Code Ann. § 36-6-106(a).

(1) <u>The love, affection and emotional ties existing between the parents or caregivers and the child</u>. There is no doubt that both parents love Isaiah and that he loves both of them. Both parents are active in his life. In addition, Father's wife has a positive relationship with the child.

(2) <u>The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver</u>. Mother has been the primary caregiver by virtue of her status as the primary residential parent. Neither parent has been shown to ignore the child's basic needs.

(3) <u>The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment</u>. Isaiah has lived with this Mother all his life, but Father has been granted and has exercised significant visitation time in the parenting plan. The trial court questioned the satisfactory nature of the environment at Mother's home where Mother, Isaiah, a baby, and frequently the baby's father all slept in the same bedroom.

(4) <u>The stability of the family unit of the parents or caregivers</u>. Father contracts to teach in middle school and also works in a program for at-risk youth. He has a stable home environment. His wife is a probation officer and is working on a master's degree. Mother is trained as a nurse, but at the time of the trial had not passed the boards to be a registered nurse. She lived with her parents and other family members[2] in a four-bedroom house. She indicated that she planned to move in the future.

---

[1]Another matter that concerned the trial court was Mother's relationship with a convicted felon who was currently on probation. This individual fathered a child with Mother and stayed overnight several times a week. This issue was not pled by Father as a material change of circumstances, but it appears that the parties thoroughly addressed the issue at trial. In light of the trial court's finding of a material change of circumstances based on Mother's actions thwarting Father's visitation and joint decision-making rights, we need not address this issue. It is, however, relevant to the best interest analysis.

[2]Residents of the house are Mother's parents, Mother's brother and sister, Mother, Isaiah, baby Caleb, and frequently Caleb's father.

(5) <u>The mental and physical health of the parents or caregivers</u>.  Neither parent has had any mental or physical health issues affecting the ability to parent.

(6) <u>The home, school and community record of the child</u>.  Isaiah is an outgoing child. He is intelligent and a typical second grader. He's played T-ball, basketball and flag football and is involved in activities at his church.

(7)(A) <u>The reasonable preference of the child, if twelve (12) years of age or older; (B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children</u>.  This factor is not applicable.

(8) <u>Evidence of physical or emotional abuse to the child</u>.  No such evidence or claims are present in this case.

(9) <u>The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child</u>.  Mother has a relationship with a person convicted of aggravated robbery.  He is the father of Mother's baby and frequently has spent the night at Mother's home.  Mother testified that he has had a good relationship with Isaiah.

(10) <u>Each parent or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child</u>.  This was an issue "of great concern to the [trial] court."  Mother has a history of unilaterally changing her joint decisions with Father.  She has attempted to manipulate Father's time with Isaiah.  The trial court found that "Mother is not a credible witness."  Father, on the other hand, was found to be "a very credible witness," whose approach toward parenting "is focused on the best interests of Isaiah."  Father testified, and the trial court believed, that Isaiah has been confused about his parents' relationship and the relationship he should have with each parent.

The trial court considered every applicable item listed in  Tenn. Code Ann. § 36-6-106(a).  After reviewing the record, we find that the court's findings are supported by the preponderance of the evidence.  Therefore, we affirm the trial court's decision that it is in Isaiah's best interest for Father to be named the primary residential parent.

Mother also seeks her attorney's fees for the trial and this appeal.  Mother's request is denied.

## Conclusion

The trial court's decision is affirmed. Costs of appeal are assessed against Mother, the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE