# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 8, 2011

## ROBERT MORGAN PHILLIPS v. STEPHANIE J. ROUNTREE

**Appeal from the Chancery Court for Dickson County**
**No. 1107307      Robert E. Burch, Judge**

---

**No. M2010-01621-COA-R3-CV - Filed March 7, 2012**

---

In this divorce appeal, Husband challenges the trial court's classification and division of the marital property and debts and its order requiring him to provide wife with his residential address. We find no error in the division of the marital estate, but agree that the trial court acted prematurely by including in the divorce decree a requirement that husband provide wife with his residential address.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

David Dee Wolfe, Dickson, Tennessee, for the appellant, Robert Morgan Phillips.

Stephanie J. Rountree, Charlotte, Tennessee, Pro Se.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Robert Phillips ("Husband") and Stephanie Rountree ("Wife") were married in September 1991 and separated in June 2007. No children were born of the marriage. Husband filed for divorce on October 9, 2007, alleging grounds of irreconcilable differences and inappropriate marital conduct. Wife counterclaimed for divorce on grounds of irreconcilable differences, inappropriate marital conduct, cruel and inhuman treatment, and adultery.

The divorce hearing was held on January 6 and 7, 2009. Both parties were found to be at fault and were declared by the court to be divorced. In a final order entered on May 7, 2009, the court divided the parties' property and debts. The provisions of the decree pertinent to the issues on appeal state as follows:

It is ORDERED, ADJUDGED and DECREED that Court finds that the parties owe a marital debt to Eden Rountree in the amount of One Hundred Ninety Nine Thousand and no/100 Dollars ($199,000.00), which is the debt set forth in Exhibit 7 reduced by the payment of Three Thousand [and] no/100 Dollars ($3,000.00) repaid by the Wife during the parties' separation.

. . .

It is ORDERED, ADJUDGED and DECREED that the medical debt in the amount of Eight Hundred Dollars ($800.00) set forth in Exhibit 7, owed to Horizon Medical Center for the Wife's broken ankle is a marital debt.

. . .

It is ORDERED, ADJUDGED and DECREED that dental bill to Care Credit in the amount of Fifty Two Hundred and no/100 Dollars ($5,200.00) set forth in Exhibit 7 is a marital debt.

. . .

It is ORDERED, ADJUDGED and DECREED that the Mr. Fix-it debt to repair the Volvo automobile in the amount of Two Thousand Three Hundred Ninety Eight and no/100 Dollars ($2,398.00) is a marital debt but the debt to repair the F150 is not.

. . .

It is ORDERED, ADJUDGED and DECREED that the total debts Two Hundred Twelve Thousand Seven Hundred Ninety Eight and no/100 Dollars ($212,798.00) found to be marital by this Court and as set forth above shall each be paid one half (½) by each party and they shall indemnify and hold the other harmless from the other's liability thereto. Of the above referenced amount the Wife has paid Five Thousand Nine Hundred Fifty Five and no/100 Dollars ($5,955.00) of which the Husband shall reiumburse her one half for a total judgment of Two Thousand Nine Hundred Seventy Seven and 50/100 Dollars ($2,977.50) against the Husband in favor of the Wife.

. . .

It is ORDERED, ADJUDGED and DECREED that the proof established that the presumptive owner of GMC Jimmy . . . and the Ford F150 . . . is Daniel Rountree [and] due to the fact that this individual was not made a party to these proceedings, the Court is without jurisdiction to adjudicate ownership of said vehicles absent the necessary party. This ruling relates only to the dispute between these parties.

On June 11, 2009, the trial court heard several post-trial motions. In an order entered on June 15, 2010, the court ordered that "the final decree of divorce be amended to require Plaintiff to furnish his actual residence address (not a Post Office Box)" to the court clerk and to Wife.

Husband presents three issues on appeal: (1) Whether the trial court erred in the identification and division of the marital property. (2) Whether the trial court erred in the identification and division of the marital debts. (3) Whether the trial court erred in ordering Husband to provide Wife with his actual physical address.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn.1999).

The determination as to whether property is marital or separate is "inherently factual." *McFarland v. McFarland,* No. M2005–01260–COA–R3–CV, 2007 WL 2254576, at *4 (Tenn. Ct. App. Aug. 6, 2007). Thus, we review the trial court's classification of property "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). A trial court has a great deal of discretion in determining the manner in which it divides marital property, and an appellate court will generally defer to a trial court's decision unless that decision is inconsistent with the factors set out in Tenn. Code Ann. § 36-4-121(c) or the evidence preponderates against the decision. *Jolly v. Jolly,* 130 S.W.3d 783, 785-86 (Tenn. 2004).

The classification and allocation of marital debts is part of the division of the marital estate. *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). The trial court's factual determinations concerning the classification and allocation of marital debts are reviewed under the standard set forth in Tenn. R. App. P. 13(d). *Id.* at 812.

ANALYSIS

1.

Husband's main argument with respect to the division of marital property is that the trial court erred in failing to classify two vehicles as marital property: a 1994 Ford F-150 truck and a 1991 GMC sports utility vehicle.

We begin with the relevant facts with respect to these two vehicles. The 1994 Ford F-150 was jointly owned by Husband and Wife. Wife testified that she signed the title to the truck over to her son on August 10, 2007 (prior to Husband's filing for divorce in October 2007). There is some conflict in Wife's testimony regarding her reason for giving title to her son: at a hearing in May 2008, Wife stated that she "gifted" the truck to her son, whereas in January 2009 she stated that she gave the truck to him in repayment of a debt for electrical services he performed at their home. Although Husband later regained physical possession of the truck, title remained in Wife's son. According to Wife's testimony, she informed Husband on their anniversary (September 1, 2007) that she had given the Ford F-150 to her son and he agreed to the transaction. Husband, however, testified that he never consented to Wife's plan to give the truck to her son.

Husband obtained the GMC vehicle from his sister in August 2007; it was titled in Husband's name only. In May 1991, Husband had executed a general power of attorney in favor of Wife appointing her as his "authorized agent for all personal, business, and legal matters" and granting her the right to act as Husband "might and could do if personally present." The power of attorney was to be effective "in perpetuity until such time as it shall be amended in writing." Wife testified that she was doing Husband's bidding when she used her power of attorney to sign the GMC truck over to her son. According to Wife, in September 2007, Husband instructed her to sign title to the GMC vehicle over to her son as collateral for a loan agreement between Husband and the son. Wife signed the assignment of title authorizing the transfer on October 8, 2007, the day before Husband filed for divorce.[1] Husband denies authorizing Wife to transfer the GMC to her son.

Tennessee Code Annotated section 36-4-121, which governs the division of property in a divorce, provides for the distribution of marital property only. Tenn. Code Ann. § 36-4-121(a). Pursuant to Tenn. Code Ann. § 36-4-121(b)(1)(A), marital property is defined as follows:

---

[1]Husband erroneously cites May 12, 2008, as the date that title was transferred; this is the date when the vehicle was registered with the county clerk's office in Wife's son's name.

-4-

[A]ll real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, *except in the case of fraudulent conveyance in anticipation of filing*, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

(Emphasis added). Husband argues that Wife's transfers of the two vehicles to her son constitute fraudulent conveyances or dissipation of marital assets. Under Tenn. Code Ann. § 36-4-121(b)(1)(A), if the transfers at issue were fraudulent conveyances, the property should still be considered marital property.

In this case, the validity of Husband's argument boils down to credibility since Wife asserts that Husband authorized both transactions. A trial court's findings regarding credibility are given great deference by appellate courts because the trial court "observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.,* 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). We "will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tenn. Bd. of Regents,* 9 S.W.3d 779, 783 (Tenn. 1999). After making his findings from the bench, the trial court made the following statements to Husband's counsel regarding Husband's credibility:

After [Husband] stated his name, I didn't believe a word your client said. And the only reason I believed this name is because you [Husband's counsel] told me that's what it was. Your client is totally incredible, wouldn't believe him if he told me the sun was shining.[2]

There is no clear and convincing evidence to contradict the trial court's credibility determination.

Given the trial court's finding that Husband lacked credibility, the evidence does not preponderate against the court's decision to exclude the two vehicles at issue from the category of marital property.[3]

---

[2]It is worth noting that the court's comments were made in response to Husband's counsel's argument regarding the ownership of the F-150 truck.

[3]While our analysis may differ somewhat from that of the trial court, we "may affirm a judgment on
(continued...)

Husband also asserts that the trial court failed to properly divide the marital personal property. Upon closer examination of Husband's position, we find his argument to be that because he was unable to obtain possession of most of the personal items initially awarded to him by the court, Wife actually received an inequitable amount of the parties' personal property.[4]

A little background is in order. When Husband left the marital residence, many of his personal items remained there. According to Husband's trial testimony, Wife impeded his efforts during the pendency of the divorce to pick up his personal property from the marital residence, and when he was allowed access to the house pursuant to a court order, his tools had been left outside and were ruined and Wife would only allow him to obtain a few items placed in a pile in the basement. Husband further testified that Wife placed some of his property in a dilapidated motor home and took it to the home of Husband's friend; because of a leak in the motor home, most of the items were ruined. Wife told a different story. She testified that Husband was given the opportunity to get his personal property on several occasions, that he did receive much of it, and that Husband refused to cooperate with Wife's efforts to get him to take the rest of his belongings. She stated that it was Husband, not Wife, who left his personal items outside in the weather, that she had the mobile home taken to Husband's friend's house in mid-October because Husband had agreed in a compromise agreement to move the mobile home there on October 8, 2007, and that Husband was at fault in failing to remove his property from the mobile home.

---

[3](...continued)
different grounds than those relied on by the trial court when the trial court reached the correct result." *First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 142 n.10 (Tenn. Ct. App. 2001) (citing *Cont'l Cas. Co. v. Smith,* 720 S.W.2d 48, 50 (Tenn.1986)).

[4]Husband asserts in his brief:

[Husband] received a dilapidated 1964 "Vintage" motor home, and a trailer, with a combined value of five thousand two hundred dollars ($5,200.00) (Exh. #7) (Ex. #17). He also had the ruined contents of the motor home (Tr. p. 55) (Ex. #17). By contrast, [Wife] received both the items she was originally awarded totaling two thousand three hundred forty dollars ($2,340.00), and all of the property which [Husband] was unable to pick up before February 1, 2009, totaling seventeen thousand forty dollars ($17,040.00) (Appendix B). She was thus awarded a total of twenty thousand forty dollars ($20,040.00).

After the divorce hearing, the trial court ordered the parties' personal property to be divided in accordance with Wife's proposed division in Exhibit 7.[5] In its order, the court stated:

> [Husband] shall pick up the personal property that is listed on Exhibit 7 that is currently located at the Timber Ridge Road property before the first day of February [2009]. On the first day of February, any and all property left in the house, as between these parties, shall be the sole and exclusive property of the Wife.

Again, the parties give different versions of the events. Husband claims that he was unable to pick up his property by the February 1, 2009 deadline set by the court because of Wife's actions. Wife claims that, when Husband showed up at her house on January 24, 2009, without her agreement, she instructed him to come back the next day. On January 25, 2009, Wife agreed to allow Husband's family members to retrieve his property under the sheriff's supervision, but they never came to get it.

On February 3, 2009, Husband filed a motion to set a date certain for Husband to retrieve his personal property and to seek sanctions for Wife's failure to cooperate. After a hearing on April 23, 2009, the trial court entered an order stating that Husband's counsel announced at the hearing that Husband was abandoning the motion to set a date certain to retrieve his property. The court ruled that Husband's requests for a date to retrieve personal property and for sanctions were dismissed.

Once again, the merits of Husband's argument regarding his inability to obtain much of the personal property originally awarded to him hinges upon his credibility. The trial court was in the position to assess the credibility of the parties first hand. The court established a deadline for Husband to retrieve his property, and Husband subsequently abandoned a motion requesting another date. Because the trial court implicitly credited Wife's testimony over that of Husband, and because clear and convincing evidence does not contradict that assessment, we find no error in the trial court's decision.

2.

Husband next argues that the trial court erred in the identification and division of the marital debts.

---

[5]Pursuant to Exhibit 7, Husband was to receive furniture, appliances, and household items worth $2,300; musical gear and other miscellaneous items worth $14,800; and equipment and tools worth $8,200.

In dividing the marital estate, a court must equitably divide the marital debts as well as the marital assets. *See Alford*, 120 S.W.3d at 813. Our Supreme Court has defined "marital debts" as "all debts incurred by either or both spouses during the course of the marriage and up to the date of the final divorce hearing." *Id.*

The biggest marital debt at issue is a debt in the amount of $199,000[6] found by the trial court to be owed to Wife's daughter, Eden Rountree. While acknowledging that the parties borrowed money from Wife's daughter during the marriage, Husband disputes the amount of the debt. Although he acknowledged at trial that he did not know the amount they had borrowed from Eden, Husband testified that he thought it was around $25,000. Wife testified that she and Husband borrowed $205,000 from her daughter and produced a ledger captioned "Eden (Bobby and Steph's debt)" showing payments to Husband and Wife from August 1996 through 2000 in the total amount of $205,000. Wife's mother testified that the ledger was in her handwriting. Husband emphasizes that Wife's mother did not remember preparing the ledger, and argues on that basis that it does not constitute reliable evidence. However, we find no error in the trial court's decision to consider the ledger since it was an accounting in Wife's mother's handwriting and, contrary to Husband's argument, Wife's mother did not disavow the accuracy of the accounting.

Husband also argues that the $202,000 debt amount is inconsistent with a compromise agreement signed by the parties immediately prior to the divorce proceedings. The agreement provides: "Phillips and Rountree agree to split all provable debt not related to the property accrued during their relationship 50/50 . . . ." Husband takes the position that the parties could have inserted the amount of the alleged debt to Eden into the agreement if it had been known. The agreement does not list any specific debts and contemplates only that all debts be proven. Moreover, Helen Hawk, Wife's friend, testified that she was present when the parties signed the compromise agreement and heard Husband acknowledge that they owed Eden $200,000.

The evidence does not preponderate against the trial court's finding of a marital debt in the amount of $199,000 to Eden Rountree.

Husband disputes debts to Wife's parents, the Petersons, in the amounts of $3,200 (for the purchase of the 1994 Ford F-150) and $2,000 (for the purchase of a 1986 Volvo). Wife and her mother both testified about these debts, and Wife introduced a ledger of payments to Husband and Wife prepared by Wife's mother including the following entries:

---

[6]This figure represents an original debt of $202,000 minus Wife's payment of $3,000.

-8-

| | | |
|---|---|---|
| 10/6/05 | Volvo | 2,200.00 |
| 3/2/06 | Ford truck | 3,200.00 |

Husband challenges this evidence because Wife did not present checks or bank records to show that the loans were actually made. We find no abuse of discretion in the trial court's acceptance of the ledger as evidence of these debts.

Husband next argues that the evidence does not support the following medical bills: $800 to Horizon Medical Center and $5,200 for dental work. With respect to the hospital bill, Wife testified that she broke her ankle on May 9, 2007, at the marital residence and she owed a balance of $800 for that treatment. Wife submitted documentation of charges for dental services provided from June 24, 2008, through July 8, 2008. Husband emphasizes that Wife received the dental services after the parties were separated. As stated above, however, marital debt includes debts incurred "during the course of the marriage and up to the date of the final divorce hearing." *Alford*, 120 S.W.3d at 813. We find no error in the trial court's decision to find these medical bills to be marital debts.

Husband also disputes a marital debt of $2,398 to Mr. Fix-It for repair of the Volvo automobile on the basis that Wife did not present a bill or other documentation of those charges. We cannot say that the trial court erred in crediting Wife's testimony and list of debts she paid without additional documentation.

The trial court found that Wife made payments totaling $5,955 on the debts found by the court to be marital debts. Husband disputes this figure. Exhibit 7, Wife's proposed division, was accepted by the court with some modifications and includes a listing of payments made by Wife on marital debts. The figure used by the court in its final order, $5,955, represents the total amount of payments made by Wife on the items found by the court to be marital debts: $3,000 on the debt to Eden; $2,398 on repairs to the Volvo; and $557 to Care Credit for dental work. Thus, contrary to Husband's contention, there is evidence to support the trial court's finding.

Once the court has identified the marital debts, it must equitably apportion the debts. *Alford*, 120 S.w.3d at 814; *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). Our courts consider the following factors in determining the equitable apportionment of marital debts:

(1) which party incurred the debt and the debt's purpose;

(2) which party benefitted from incurring the debt; and

(3) which party is best able to assume and repay the debt.

*Id.* (citations omitted). Reviewing courts give great weight to a trial court's division of the marital estate and are "disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). Moreover, the division need not be equal to be equitable. *Id.*

Husband argues that it was inequitable for the court to order him to pay one-half of the marital debt and that application of the *Mondelli* factors would result in an assessment of a majority of the debt to Wife. We disagree. In this case, the court's distribution of the debts and assets hinged in no small part on the credibility of the two parties, and we give the trial court's findings great deference when issues of credibility and weight are involved. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010). Wife and Husband gave divergent testimony concerning their respective contributions to the marital debt. Wife described Husband as an irresponsible ne'er-do-well who had the ability to earn money but chose to pursue a series of ill-conceived business ventures and caused the couple to incur substantial debt to support his ventures and to cover living expenses. Husband argues that Wife should pay the debt on the Ford F-150 she gave to her son and for medical and auto charges that benefited only her and that her employment prospects are much more promising than his.

Overall, we cannot say that the trial court erred in dividing the marital debt in half-- the arrangement contemplated by the parties' compromise agreement, which the court found to be "effective and legally binding on the parties."

3.

The final issue raised by Husband is the propriety of the trial court's order in the final decree requiring him to provide Wife with his physical address, not just a post office box.

The requirement at issue was not included in the original version of the final decree entered on May 7, 2009. After hearing post-trial motions on April 23, 2009, the court entered another order on May 7, 2009, requiring Husband to provide his address to the court clerk and to Wife. Wife subsequently filed a motion for clarification and correction of the previous orders and seeking sanctions for Husband's failure to cooperate. In this motion, Wife requested that the court order Husband to provide his "true residential address" to the court and to Wife and to provide them with any change of address "until all debts are paid in full, so [Wife] is not required to waste any more of this Court's valuable time in pursuit of debt payments." In an order entered on June 10, 2010, the court ordered that the final

decree be amended "to require [Husband] to furnish his actual residence address (not a Post Office Box)."

On appeal, Wife asserts that the trial court's order was necessary to allow her to collect the debts owed to her by Husband. She does not specify the debts to which she is referring. In the final divorce decree, Husband is ordered to reiumburse Wife a total of $2,997.50 for his share of marital debts she paid. Other debts mentioned in the decree are owed to other family members who are not parties to this action; therefore, their debts could not be adjudicated by the trial court. While the trial court had the authority, pursuant to Tenn.Code Ann. § 36-4-106(b)(2),[7] to require either spouse to provide his or her residential address if the court determined this information was "relevant and necessary" to the resolution of issues presented in the divorce, Wife justifies the residential address requirement as an aid to the enforcement of the final decree.

Wife argues that Husband is in contempt of the May 2009 order. Wife does not cite any authority allowing a trial court in the context of a divorce to order a spouse to provide his or her residential address in anticipation of problems in enforcing the divorce decree. If Husband fails to obey the court's order, the proper procedure is for Wife to file a contempt petition and prove her case. In the context of the contempt petition, the court can take whatever action is necessary to force Husband's compliance.

Because of the premature nature of the court's requirement that Husband provide Wife with his residential address, we reverse that portion of the court's order.

---

[7]Tenn. Code Ann. § 36-4-106(b)(2) states:

If the complainant or the defendant shows to the satisfaction of the court in which the petition is filed that the residential address of the other party is relevant and necessary in order to prove the allegations contained in the complaint or to ascertain information necessary to determine value and/or ownership of property, or to ascertain other data necessary to evaluate and agree upon a property division or custody or defend against such allegations, the court may order either party to reveal such residential address to the other party.

Costs of appeal are assessed one-half to each party and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE