IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 26, 2012 Session

## LESLIE NEWPHER TACHEK, v. DAVID JAMES TACHEK

**Appeal from the Circuit Court for Davidson County**
**No. 10D-1703      Hon. Carol Soloman, Judge**

**No. M2011-02661-COA-R3-CV - Filed August 15, 2012**

In this divorce action the Trial Court granted the parties a divorce, gave custody of the children to the father, divided the marital property and ordered a monetary judgment against the mother to the father, as an equitable distribution of the marital property. The mother has appealed and questioned the Trial Judge's award of custody of the children to the father, and the Trial Judge ordering a monetary judgment against the mother to the father. We affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Nicholas W. Utter, Nashville, Tennessee, for the appellant, Leslie Newpher Tachek.

Brenda Rhoton Clark, Nashville, Tennessee, for the appellee, David James Tachek.

### OPINION

In this divorce action, the mother filed a Complaint for Divorce stating that the parties had two minor children, and she alleged that irreconcilable differences had arisen between the parties. She asked to be designated as primary residential parent of the children.

The father filed a Counter-Complaint for Divorce, alleging the mother was guilty of inappropriate marital conduct and adultery. The mother answered, admitting that she was

guilty of adultery, but stating that her conduct was caused by the father's withdrawal. Both parties in anticipation of trial filed proposed parenting plans, naming themselves as primary residential parent.

At trial, several witnesses testified, including the parties. At the conclusion of the trial, the Trial Judge ruled from the bench, and awarded the divorce to the father, finding the mother was guilty of inappropriate marital conduct. The Court observed that it was concerned about the mother's drinking and about the father's control. The Court admonished the father not to behave like he did the day he applauded the mother for getting up late, because that was a form of control. The Court admonished the mother to drink less and stated that she could probably benefit from going to AA or perhaps Al-Anon.

The Court determined the father should be primary residential parent, and awarded the father the house (and related debt, since the mother was relieved of same via her discharge in bankruptcy). The Court found that as for stability and continuity, it would weigh in the father's favor that he was still living in the house for the time being. The Court held the father was a good caregiver, and that the mother let the children get away with too much, like painting on the door and walls. The Court stated the father would be better to put the children on a schedule, and that he took care of their needs better.

The Court found that both parents were disposed to provide the children with food, medical care and education, and that if the mother wanted to keep the children in private school and pay for it, that would be fine, but otherwise the father would select the school. The Court said that as for stability and a satisfactory environment, this factor would weigh in the father's favor, because the mother's house was not well kept. The Court observed that while she did not expect perfect housekeeping, the mother at least had to be able to keep it "passable".

The Court found the father was more stable overall, and that the mother had a drinking issue. The Court found that the factor regarding community/school record weighed equally. Taking into account all the factors, the evidence weighed heavily in favor of making the father the custodian.

In arriving at the property settlement, the Trial Judge found the mother owed the father $34,142 to equalize the property/debt distribution. The Court noted that it was going to make the mother repay the money she took out in savings bonds that belonged to the children. The mother would be allowed to pay the judgment at the rate of $200 per month, and for purposes of figuring child support, both parties' income would be set at $3,000 per month.

In the Court's Final Judgment, the Court stated it had considered the factors listed in Tenn. Code Ann. §36-6-106(a), and found that it was in the children's best interests to name the father primary residential parent.

The Court awarded the father the marital residence, along with its debt, finding the mother had been discharged in bankruptcy from this indebtedness. The father was awarded his interest in Noble Building Group, along with any associated debt. The mother was ordered to deliver the children's remaining savings bonds to the father for him to maintain. The Court then divided the personal property equally.

The Court ordered the father to pay the debts to Bank of Nashville, Dave McCabe, American Express, Chase and Citicard, and ordered the mother to be responsible for any amounts owed to St. Paul Christian Academy, including any amounts that continued to accrue if the mother chose to have the children attend.

The Court entered the Permanent Parenting Plan proposed by the father, giving the father 221 days with the children and the mother 144 days. The mother was given alternating weekends from Thursday to Monday, the other Thursday evenings, alternating spring and fall breaks, and half of the children's Christmas holiday time. The parents were to alternate weeks during the summer. The mother and father were both found to have income/potential of $3,000 per month, and the mother was ordered to pay $523 per month in child support. The mother filed a Notice of Appeal.

The mother raises these issues on appeal:

1.      Whether the Trial Court erred in finding the father was comparatively more fit than the mother and erred in finding that the children's best interests were served by awarding custody to the father?

2.      Whether the Trial Court erred in awarding the father a monetary judgment against the mother?

The mother argues the Trial Court erred in naming the father primary residential parent rather than her. Regarding custody determinations, Tenn. Code Ann. §36-6-106 provides:

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that

permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;

(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .

(4) The stability of the family unit of the parents or caregivers;

(5) The mental and physical health of the parents or caregivers;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . .

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents,

consistent with the best interest of the child.

Further, as this Court has previously explained:

> Decisions involving custody and visitation are among the most important decisions in a divorce case. The courts must devise custody arrangements that promote the development of the children's relationship with both parents and interfere as little as possible with post-divorce family decision-making. These decisions are not intended to reward or to punish parents, and, in fact, the interests of the parents are secondary to those of the children. The goal of these decisions is to promote the children's best interests by placing them in an environment that will best serve their physical and emotional needs.
>
> No hard and fast rules exist for determining which custody and visitation arrangement will best serve a child's needs. The inquiry is factually driven and requires the courts to carefully weigh numerous considerations.
>
> The comparative fitness analysis is not intended to ascertain which parent has been perfect because perfection is as unattainable in parenting as it is in life's other activities. Courts understand that parents have their own unique virtues and vices. Accordingly, Tennessee's courts do not expect parents to prove that they are exemplary or that the other parent is completely unfit. Instead, they carefully consider the conduct and circumstances of the parents to determine which of the available custodians is comparatively more fit to have permanent custody of the child.

*Earls v. Earls*, 42 S.W.3d 877, 885 (Tenn. Ct. App. 2000)(citations omitted).

Considering the above factors, the Trial Court made the appropriate decision. As the Court found, the factors regarding love and emotional ties, disposition to provide for the children's needs, and school/community record weighed equally for both parties. The other relevant factors, however, weighed heavily in the father's favor. For example, the proof demonstrated the father would give the children more stability and continuity in their lives, as the mother seemed to be ill-equipped to deal with parenting, often seeming to need to "get away" and do her own thing. The father was clearly the stabilizing factor in the children's lives.

Both parties had been caregivers for the children prior to and after separation, and the father demonstrated that he shared equally in tasks such as cooking, cleaning, and bedtime routines. The parties testified the father was also active in the children's school activities and education, and that he had recently been spending more time coaching one of the children's

flag football team and encouraging his athletic interests as well.

The Trial Court correctly found the father would give the children a more stable and satisfactory home environment because, as the Court noted, the mother obviously had a serious drinking problem that seemed to be getting worse as time went on. The mother admitted that she drank almost nightly and that she often got up in the middle of the night and had a drink simply to be able to go back to sleep. The evidence does not preponderate against the Trial Court's findings.

We affirm the Trial Court's adoption of the father as primary residential parent, which the evidence demonstrated was in the children's best interest.

Next, the mother argues the Trial Court erred in awarding the father a judgment for $34,142 against the mother, which the Court stated was to equalize the marital property/debt distribution. The Trial Court is to make an equitable distribution of the marital estate by weighing the relevant factors enumerated in Tenn. Code Ann. §36-4-121©), and an equitable distribution is not always an equal one. *Larsen-Ball v. Ball*, 301 S.W.3d 228 (Tenn. 2010). As the Court further stated in that case, "[w]e give great weight to the trial court's division of marital property and 'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.' " *Id., quoting Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

Trial courts have broad discretion in dividing the marital estate, and should weigh the most relevant factors in light of the evidence of each case. *See Larsen-Ball*, *supra*. We review the trial court's findings of fact *de novo* with a presumption of correctness and honor those findings unless the evidence preponderates to the contrary. *Id.*; Tenn. R. App. P. 13(d). When issues of witness credibility and weight of testimony are involved, we afford considerable deference to the trial court's findings of fact. *Id*.

In this case, the parties were married for about ten years, and were of similar age and physical health, which was apparently good. The parties had already completed their educations when they married, and neither contributed to the earning power of the other, although it was conceded the father always supported the mother's business, investing both his time and money in the same. Both parties had worked as wage earner and homemaker during the marriage, and both parties had contributed to the marital estate. Historically, the mother earned slightly more income than the father did, but was more responsible for dissipating the marital estate than the father.

The parties' ability to acquire assets in the future would seem to be about the same.

-6-

There was no proof regarding tax consequences from the divorce.

The Court awarded the marital residence to the father along with its significant debt, and there was no significant dispute regarding its value or the fact that if it sold, it would probably yield little or no equity. The father was also ordered to pay all of the remaining marital debt which was not discharged by the mother's bankruptcy.[1] Further, the mother was awarded personalty valued at $13,000-14,000 more than the father was awarded. Taking into account the above factors and the economic situation of the parties, we hold the Trial Court did not err in ordering the mother to pay the father $34,142 to make the property/debt distribution fairly equal.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Leslie Newpher Tachek.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[1]The mother did not dispute this debt was marital or that it totaled around $50,000.00.