IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2013 Session

## TROY STEVEN POTTER v. CHRISTA GILMAN POTTER

**Appeal from the Circuit Court for Hamilton County**
**No. 11D1609      Jacqueline S. Bolton, Judge**

**No. E2012-02390-COA-R3-CV-FILED-AUGUST 19, 2013**

This case focuses on the proper classification and distribution of the parties' assets incident to a divorce. Troy Steven Potter ("Husband") filed a divorce complaint against Christa Gilman Potter ("Wife") on August 17, 2011. The parties proceeded to trial in August 2012 on the issues of alimony and classification and division of property. The court awarded transitional alimony to Wife and divided the parties' assets and debts. Husband appeals the trial court's classification and division of property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

William H. Horton, Chattanooga, Tennessee, for the appellant, Troy Steven Potter.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellee, Christa Gilman Potter.

**OPINION**

I.  Factual and Procedural Background

Husband and Wife were married on September 30, 2001. At the time of the marriage, Husband, who is a home builder, was in the process of building a sizeable home at 515 Gentlemen's Ridge in Hamilton County. Although the parties had no children born of their marriage, each was a parent of two minor children from a prior marriage. Husband, Wife, and their four children moved into the Gentlemen's Ridge home when the parties married,

while the home was being completed. Wife was not employed outside the home at that time. She served as a stay-at-home mother for the parties' children. Husband and Wife enjoyed a lavish lifestyle over the years, taking numerous expensive vacations and sending all four children to private schools.

On April 16, 2003, the Gentlemen's Ridge home was sold for $1,425,000. The net proceeds from the sale of that home were used to purchase a home at 1321 Brow Estates in Hamilton County. The Brow Estates home was purchased for $598,000. An additional $129,000 was invested in remodeling the home. It is undisputed that the funds for the purchase and remodeling of the Brow Estates home came from the sale of the Gentlemen's Ridge home, which Husband owned prior to the marriage. Wife did, however, contribute to the marital estate $50,000 from the sale of a home she owned prior to the marriage. A portion of those funds was used to decorate the Brow Estates home. The Brow Estates improved real property was titled in the names of both Husband and Wife.

In approximately 2006, Wife obtained employment outside the home, which she testified displeased Husband. During that year, Wife earned $8,913. Her income increased in subsequent years as follows:

2007 - $17,037
2008 - $21,415
2009 - $30,850
2010 - $31,153

In 2011, Wife was laid off from her employment due to lack of funding; consequently, her earnings for that year were only $12,795. At the time of trial, Wife was receiving unemployment compensation benefits and had not been able to locate another job.

Husband earned income not only from his employment as a builder, but also from participation in his family's business, which owned and managed apartment buildings as well as other real properties. Husband's income, although subject to some fluctuation, was significantly higher than Wife's, to wit:

2007 - $  74,703
2008 - $122,475
2009 - $  62,726
2010 - $165,890
2011 - $143,000

The parties separated in September 2009 when Husband left the Brow Estates home. Wife and her two children remained in that home, with Husband paying all related expenses, including insurance, taxes, and utilities. Husband subsequently initiated the instant divorce action on August 17, 2011. Wife filed a motion seeking temporary spousal support and assistance with her legal fees. The trial court ordered Husband to continue paying the home-related expenses and to pay Wife an additional $750 per month as temporary alimony. Husband was also ordered to pay Wife's attorney $3,000 toward her legal expenses. The Brow Estates home was placed on the market for $599,000. By the time of trial, the listing price had been reduced to $549,000. The parties, however, had received no offers to purchase.

Following a bench trial, the trial court declared the parties to be divorced pursuant to Tennessee Code Annotated § 36-4-129 (2010). The trial court found the following items to be assets of the marital estate and divided them as shown:

| Brow Estates home | $500,000 value of equity | split equally between parties |
| --- | --- | --- |
| 2006 Ford 250 | $20,000 value of equity | awarded to Husband |
| 2009 Suburban | $9,000 value of equity | awarded to Husband |
| Furniture | unknown value | awarded to Wife |
| Guns | $500 value | awarded to Husband |
| 2006 BMW | $5,891 value of equity | awarded to Wife |
| Gateway accounts | $6,800 value | awarded to Husband |
| TVA account | $500 value | awarded to Wife |

The trial court also awarded Wife transitional alimony of $3,500 per month for three years, plus the cost of her health insurance. This award of transitional alimony was ordered to commence when the Brow Estates home was sold, when Wife vacated the home, or if her interest in the home was acquired by husband. Further, Wife was ordered to pay the debt she incurred post-separation, in the total amount of approximately $30,000. The court also ordered that Husband could purchase Wife's equity interest in the home for $250,000. Husband timely appealed the trial court's ruling.

## II. Issues Presented

Husband presents the following issues for our review:

1. Whether the trial court erred in finding that the Brow Estates home, which was purchased with premarital funds, was transmuted to marital property.

2. Whether the trial court erred in its division of marital property.

### III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions relating to the classification of assets as marital or separate are questions of fact. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).

Further, as this Court has previously held:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. §36-4-121(c)

outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and §36-4-121(a)(1) only requires an equitable division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140 at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

## IV. Classification of Property

Husband posits that the trial court erred in classifying the Brow Estates home as marital property. He argues that, even though the home was purchased during the marriage, the funds used for the purchase came entirely from proceeds of the sale of his premarital property. Wife asserts that the trial court's classification was correct as the home was titled in both parties' names and treated as marital property. We agree with Wife.

It is well settled that assets acquired during a marriage are presumed to be marital property, and a party desirous of disputing this classification has the burden of proving by a preponderance of the evidence that the asset is separate property. *See Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007). Therefore, an analysis of the proper classification of this asset must begin with the presumption that it is marital property as it was purchased during the parties' marriage. This presumption can be rebutted, however, by evidence of circumstances or communications clearly indicating an intent that the property remain separate. *See Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1989). As this Court has previously explained, the types of evidence sufficient to rebut the presumption are found in Tennessee Code Annotated § 36-4-121(b)(2)(B)-(F) (Supp. 2012):

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

*Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407 at *4 (Tenn. Ct. App. Sept. 1, 2006) (referencing the statutory definition of "separate property" found in Tennessee Code Annotated § 36-4-121(b)(2)(B)-(F)).

Husband asserts that the home should be classified as his separate property as "property acquired in exchange for property acquired before the marriage" because it was purchased with proceeds from the sale of property he owned prior to the marriage. Husband relies on the case of *Barnett v. Barnett*, No. 01A01-9706-CV-00244, 1998 WL 122717 (Tenn. Ct. App. Mar. 20, 1998), in support of this position. In *Barnett*, the parties were both "savvy business people" who had been married before, and the wife maintained a significant separate estate at the time of the parties' marriage. *Id.* at *9. The proof showed that the parties agreed before and during the marriage to segregate their assets. *Id.* The wife purchased a home and a condominium in Florida during the marriage with her separate funds, and both were titled solely in her name. *Id.* This Court found both assets to be the wife's separate property as they were property "acquired in exchange for property acquired before marriage." *Id.*

Husband argues that this case presents the same factual scenario because he purchased the home at issue with funds from premarital property and paid for renovations on the home with funds from premarital property. *Barnett* is factually distinguishable, however, because the parties herein did not evince a definite intent to segregate their assets. Further, the most significant factual distinction between *Barnett* and the case at bar is that Husband allowed title to the improved real property to be placed in both parties' names.

As the trial court found, Husband is a businessman whose profession involves building homes and dealing in real estate matters. Husband admitted that he had closed numerous real estate transactions in his career, both on his own behalf and for the benefit of his family business. Husband acknowledged that the Brow Estates home was titled in the names of both Husband and Wife. He asserts, however, that he did not ask for the deed to be prepared in this fashion. Husband claimed that when he questioned the attorney who prepared the deed about this alleged error, the attorney told him that the deed had to be in the names of both parties because they were married. Husband contends that it was never his intention to make a gift to the marital estate by titling this property jointly. Husband nonetheless accepted the deed and executed the consideration statement.

-6-

Separate property can be transmuted into marital property when it is titled in the names of both spouses or where property is purchased with separate funds but title is taken in joint tenancy. *See Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1989). As the Supreme Court explained:

> [S]eparate property may become part of the marital estate if its owner treats it as if it were marital property. Professor Clark describes the doctrine of transmutation as follows:
>
>> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital.

*Batson*, 769 S.W.2d at 858 (quoting 2 H. Clark, The Law of Domestic Relations in the United States § 16.2, at 185 (1987)). The fact that it is possible to trace the source of the funds back to separate property is thus irrelevant for the purposes of rebutting the presumption of a gift to the marital estate created by transmutation. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002).

> As this Court has previously explained:
>
> [A] marital residence acquired by the parties during the marriage and owned by the parties jointly should be classified as marital property. Even a marital residence that was separate property prior to the marriage or that was purchased using separate property should generally be classified as marital property if the parties owned it jointly because joint ownership gives rise to a rebuttable presumption that the property is marital, rather than separate, property.
>
> However, as relevant as record ownership may be to the classification of an asset, it is not always controlling. In the final analysis, whether a particular asset is marital or separate depends on the conduct of the parties, not the

record title of the asset. An asset separately owned by one spouse will be classified as marital property if the parties themselves treated it as marital property.

Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property. Accordingly, our court has classified separately owned real property as marital property when the parties agreed that it should be owned jointly even though the title was never changed, or when the spouse owning the separate property conceded that he or she intended that the separate property would be converted to marital property.

*Fox*, 2006 WL 2535407 at *5 (internal citations omitted).

Applying the factors enumerated in *Fox* to the present case, it is clear that the trial court did not err in classifying the Brow Estates home as marital property. The proof established that the parties used the home as a marital residence, and both parties managed and maintained it. *See Id.* In addition, the title to the property was placed in the names of both parties. Therefore, based on their conduct, the parties treated the home as a marital asset.

Husband argues that the parties' intentions were to keep their assets separate. He testified that the parties maintained separate bank accounts, but he also admitted that they had a joint account for a few years. Wife proved that she deposited money into the joint account. Wife also testified that she received $50,000 from the sale of a home she owned prior to the marriage, which funds were made a part of the marital estate and utilized for the benefit of the family.

Wife further testified that she was present at the closing on the Brow Estates home and did not hear the attorney tell Husband that the home had to be titled jointly because the parties were married. Wife also stated that Husband never mentioned anything to her about the deed being incorrect. Wife established that the parties maintained a joint bank account at the time the home was purchased and that she deposited money into this account. Husband spent such funds as he saw fit. Wife testified that they did not segregate all of their assets and that this was never their intent. Husband, while stating that his intent was to keep his premarital property separate, did not testify that the parties discussed and agreed to do so.

Husband also relies on the case of *Feather v. Feather*, No. 01A01-9704-CH-00183, 1998 WL 151393 at *9 (Tenn. Ct. App. Apr. 3, 1998), in support of his argument that the home should be classified as his separate property. In *Feather*, however, the parties discussed and agreed that the wife's contribution of separate property to the marital estate would remain her separate property regardless of how the property was titled, and the husband admitted at trial that this was their agreement. *Id.* In the present case, there was no such agreement shown. As stated above, a party who wishes to rebut the presumption of a gift to the marital estate must present clear evidence of circumstances or communications indicating an intent that the property remain separate. The record in this case does not contain proof of clear circumstances or communications indicating such intent. The trial court's classification of the home as marital property is supported by a preponderance of the evidence.

## V. Equitable Division of Marital Property

Husband contends that, even if the equity in the Brow Estates home was marital property, the trial court erred in its division of the marital estate. Specifically, Husband asserts that the trial court should not have divided the equity in the home equally because his separate property funded its purchase and renovation. The equity in this improved real property was the most significant asset in the marital estate.

As this Court has explained:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property. In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results.

*Payne v. Payne*, No. E2006-02467-COA-R3-CV, 2007 WL 2668588 at *4 (Tenn. Ct. App. Sep. 12, 2007) (internal citations omitted). The trial court is to consider the following statutory factors in making an equitable distribution:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (Supp. 2012).

This case involves a ten-year marriage. At the time of trial, Wife was forty-one years of age, while Husband was fifty-one. There was no proof regarding any physical ailments experienced by Husband. Wife testified that she suffered from migraines and high blood pressure, requiring medication for the treatment of these conditions. She also took an anti-

depressant and a sleep aid. The evidence supports a determination that neither party had any physical problems that would affect his or her employability.

Husband's earning capacity was substantially greater than Wife's. Husband was a successful home builder, and he also earned income managing apartments for his family's business. Wife's employment had been as a receptionist or an administrative assistant. Wife testified that she had been unable to find employment at the time of trial due to her lack of vocational skills. She wished to attend school to improve her skill set and employment opportunities. Both parties testified that they had financial needs, but with Wife's lack of income, her needs were greater than Husband's. Husband's earning capacity also provided him a greater ability to acquire assets and earn future income.

Both parties contributed to the marital estate as wage earners and parents, with Wife also making a substantial contribution as a homemaker for several years. Husband contributed substantially more separate property to the marital estate than did Wife. As reviewed above, Husband's separate property funded the purchase and renovation of the marital residence in an amount exceeding $700,000, whereas Wife contributed separate property of approximately $50,000.

Husband had a greater separate estate at the time of the marriage and also had appreciable separate property at the time of the divorce, as he held an ownership interest in his family's business valued at $18,000,000. He testified, however, that this interest was burdened with debt of almost equal value. Apart from this asset, Husband had separate accounts worth approximately $11,000, and Wife had a separate account worth approximately $57,000. Wife also had a significant amount of debt, which she had incurred during the parties' separation by reason of living expenses and medical bills. The proof is absent regarding the other statutory factors.

Our Supreme Court has explained the proper appellate review of this issue:

We give great weight to the trial court's division of marital property and " 'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.' " *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)).

Tennessee Code Annotated section 36-4-121(c) provides that in making an equitable division of marital property, the trial court shall consider all relevant factors. Because trial courts have broad discretion in dividing the marital

estate, the division of marital property is not a mechanical process. *Flannary*,
121 S.W.3d at 650. Rather, the trial court should weigh the most relevant
factors in light of the facts of each case. *Tate v. Tate*, 138 S.W.3d 872, 875
(Tenn. Ct. App. 2003).

*Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010).

In this case, the trial court determined that an equitable distribution was a near-equal distribution. We cannot find that this distribution "lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *See id.* The parties were married for ten years, and both contributed to the marital estate in a substantial manner. Although it is true that Husband contributed a greater amount of separate property, he also had a significantly greater earning capacity and ability to replace assets than Wife. Wife was a homemaker for many years and her lack of vocational skills and work experience will likely mean that she will never be able to earn an income commensurate with Husband's or enjoy a lifestyle similar to that which Husband enjoys. Wife was also ordered to pay all of the debts that she incurred during the parties' separation. Therefore, considering all of the relevant factors, we conclude that the trial court did not abuse its discretion in making its division of the parties' marital property.

## VI. Conclusion

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Troy Steven Potter. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE