IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2020 Session

**TAWANA S. WILSON v. TIMOTHY L. WILSON**

**Appeal from the Circuit Court for Davidson County**
**No. 17D-1151          Philip E. Smith, Judge**
_____

**No. M2019-01275-COA-R3-CV**
_____

A husband never answered his wife's complaint for divorce, and the trial court entered a default against him. After an evidentiary hearing, the trial court granted the wife a divorce, divided the marital estate, and awarded the wife alimony. On appeal, the husband faults the court for denying his motion to set aside the final decree, for its valuation and division of the marital estate, and for its alimony award. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Melanie Lane, Jamestown, Tennessee, for the appellant, Timothy L. Wilson.

Lorraine Wade, Nashville, Tennessee, for the appellee, Tawana S. Wilson.

**OPINION**

**I.**

**A.**

In June 2017, Tawana Wilson ("Wife") filed for divorce from her husband of nearly sixteen years, Timothy Wilson ("Husband"). As grounds, Wife alleged irreconcilable differences. But later she amended her complaint to allege Husband's inappropriate marital conduct as an additional ground for divorce. Among other relief, Wife asked for spousal support and an equitable division of the marital assets and liabilities.[1]

_____

[1] Wife also asked to be named the primary residential parent of the couple's child, but the child

Husband did not answer, and just over a year and five months after Wife filed her amended complaint, she moved for a default judgment and to set the case for a final hearing. The trial court granted the motion and set an evidentiary hearing at which Wife, Wife's friend, and Wife's mother testified. Husband did not appear at the hearing.

Wife provided the bulk of the testimony. She related Husband's infidelities and his physical abuse. Husband lived with Wife in the marital home, but according to Wife, Husband sometimes stayed elsewhere. Husband never denied his extra-marital affairs to Wife, and Wife knew that Husband had fathered two children by other women.

Wife also testified concerning the couple's finances and assets. Wife worked as a "full service manager" for Metro Nashville Public Schools. She was reluctant to testify to Husband's occupation, but she did testify that Husband had served time for drug possession and that their home had been raided by the police. The court found that Husband was a drug dealer.

The parties also had rental income. Wife testified about 16 parcels of real property owned by Husband or by the couple together, 15 of which had been used as rental properties. During the course of the marriage, Husband transferred nine of the 16 properties by quitclaim deed to his father, friends, and others. Three of the transfers took place after the filing of the divorce.

In the final decree, the trial court awarded Wife a divorce on the ground of inappropriate marital conduct. The court then considered the marital estate, which consisted of real property, debts associated with the real property, bank accounts, and vehicles, and divided the assets and debts between the parties. On the issue of alimony, the court found that "rehabilitation is not appropriate" and that Wife "needs more than transitional support." Based upon Wife's need and Husband's ability to pay, the court awarded Wife $1,000 per month in alimony *in futuro*.

B.

Within 30 days of the entry of the final decree, Husband retained counsel and filed a motion to set aside the final decree and for new trial. The motion acknowledged that Husband was served with the complaint for divorce and claimed that he had lived with Wife in the marital residence "throughout the entire duration of the divorce," which was one of two addresses Wife's attorney used for service of pleadings. Husband claimed that "[t]he parties had discussed reconciling on numerous occasions and [he] knew nothing about the divorce moving forward." He also claimed that he had no notice of the motion for default or the final hearing. Husband believed "that Wife intentionally withheld all

reached the age of majority during the pendency of the case.

2

correspondence and mail [related to the divorce] so that he would not know to participate in the divorce proceedings."

In response, Wife filed a sworn affidavit in which she denied either telling Husband she "was trying to work things out or that [she] wanted to reconcile" or intercepting his mail. Wife also filed the transcript from Husband's deposition during which he also denied receiving "a lot of paperwork" relative to the divorce. He claimed that "whatever was mailed to the house, I never got it because [Wife] received the mail and I don't know what she did with it."

After a hearing, the court denied Husband's motion to set aside. So Husband appealed.

Following the appeal, this Court entered a show cause order because the final decree of divorce did not resolve all outstanding claims. *See* Tenn. R. App. P. 3(a) (providing for appeals as of right only from final judgments); *see also In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (recognizing "that in a civil case an appeal as of right may be taken only after the entry of a final judgment"). In response to the order, the parties obtained a final judgment that resolved all outstanding claims and supplemented the record on appeal.

## II.

In his appeal, Husband raises three issues. First, he argues that the trial court erred in denying his motion to set aside the final decree of divorce and request for a new trial. Second, he argues that the court erred in dividing the marital estate. And finally, he argues that the court erred in awarding Wife $1,000 per month in alimony *in futuro*. For her part, Wife requests an award of attorney's fees she has incurred on appeal.

### A.

In addressing Husband's first issue, we begin by determining the basis under which Husband sought relief. Husband's motion did not cite a rule of civil procedure or any authority for the court to set aside its final decree of divorce. Likewise, the transcript of the argument before the trial court is devoid of any reference to the legal basis for relief. On appeal, Husband contends that relief was appropriate under Tennessee Rule of Civil Procedure 60.02 because "failure of notice constitutes excusable neglect." *See* Tenn. R. Civ. P. 60.02(1) ("On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for . . . excusable neglect . . . ."); *see also Henry v. Goins*, 104 S.W.3d 475, 480 (Tenn. 2003) ("When a party has no notice of a critical step in a court proceeding, the circumstances may make out a case of excusable neglect."). But "[t]he function of . . . Rule [60.02] is to give relief from final judgments." *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977).

3

As noted, the final decree of divorce Husband sought to set aside was not a final judgment. It did not resolve Wife's request for attorney's fees. Because the final decree was not a final judgment, the proper avenue for relief was under Tennessee Rule of Civil Procedure 54.02. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 488 (Tenn. 2012) (concluding that "motions seeking relief from a trial court's decision adjudicating fewer than all the claims, rights, and liabilities of all the parties, should be filed pursuant to Rule 54.02").

We review a trial court's decision on "a motion to revise under Rule 54.02" for an abuse of discretion. *Id.* at 487. So our review is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We will not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Yet, discretionary decisions do not escape appellate scrutiny. *Id.* In reviewing such decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.*

Our supreme court instructs that, "when a party seeks relief from a default judgment due to 'excusable neglect' [under Rule 54.02]," we first consider "whether the conduct precipitating the default was willful." *Discover Bank*, 363 S.W.3d at 494. Only if the conduct is not willful do we then "consider whether the defaulting party has a meritorious defense and whether the non-defaulting party would be prejudiced by the granting of relief" and other factors. *Id.* But if the conduct of the defaulting party is willful, "the judgment cannot be set aside on 'excusable neglect' grounds." *Id.* Willful conduct includes "deliberate choices" and "conduct that is flagrant and unexplained." *Id.* at 493 (first quoting *Hayes v. Hayes*, No. M2006-02356-COA-R3-CV, 2007 WL 2580026, at *2 (Tenn. Ct. App. Sept. 6, 2007); and then quoting *Barber & McMurry, Inc. v. Top-Flite Dev. Corp.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986)).

Here, the conduct that precipitated the default was willful. Husband acknowledged being served with the complaint for divorce and deciding to represent himself. He claimed, both in his April 2018 deposition and in his June 2019 motion to set aside, that Wife was intercepting his mail at the marital residence. But immediately after making that claim in his deposition, Husband confirmed that divorce paperwork should be sent to him at the marital residence. We also note that the certificate of service for the motion for default judgment and for the order granting default and setting hearing show that both papers were mailed to Husband at the marital address and another address where he frequently stayed. While Husband offered the suspect assertion that he did not receive notice at his marital residence, he failed to account for or explain why the notice sent to his other address was not sufficient. A certificate of service "is prima facie evidence that the document was

served in the manner described in the certificate and raises a rebuttable presumption that it was received by the person to whom it was sent." *Orr v. Orr*, No. 01-A-01-9012-CH-00464, 1991 WL 226916, at *4 (Tenn. Ct. App. Nov. 6, 1991).

Husband approached the divorce as if it was not going to happen. In refusing to respond to questions or produce subpoenaed information, he stated, "[W]e're not going to get a divorce right now." The following exchange from his deposition typified his attitude:

> Wife's Counsel: And as far as you know, it hasn't been – your wife has not dismissed her Complaint for Divorce as we sit here today, correct?
>
> Husband: That is correct.
>
> Wife's Counsel: Have you had any conversations with your wife about the divorce? Has she indicated to you that she's not going through with the divorce?
>
> Husband: No, we haven't spoken.
>
> Wife's Counsel: So what makes you think that you're not going to get a divorce?
>
> Husband: That's just my wishful thinking.

Reality proved Husband wrong.

We discern no abuse of discretion in the denial of the motion to set aside. Husband's conduct in failing to respond to the complaint, in failing to meaningfully participate in the proceedings, and in failing to consult with legal counsel until after entry of the decree of divorce was deliberate and not adequately explained; thus it was willful.

## B.

We also apply the deferential abuse of discretion standard of review to the division of marital property. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). In dividing marital property, the trial court follows "essentially a three-step process." *Melvin v. Johnson-Melvin*, No. M2004-02106-COA-R3-CV, 2006 WL 1132042, at *10 (Tenn. Ct. App. Apr. 27, 2006) (Koch, J., concurring) (citing *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998)). First, it identifies the parties' property and classifies it as either marital or separate. *Id.* Second, the court "value[s] the marital property (and, when appropriate, the separate property)." *Id.* Third, it "divide[s] or apportion[s] the marital property." *Id.* In the final step, the factors in Tennessee Code Annotated § 36-4-121(c) provide the guide. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010). But the application of the statutory

factors is not a mechanical process. *Id.* To reach an equitable division, the trial court must weigh the relevant factors in light of the proof at trial. *See id.*; *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).

Husband faults the court for each step of the process. First, he complains of improper classification, specifically that the court included real estate no longer owned by him or Wife as marital property. "Marital property" includes

> all real . . . property . . . acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . and including any property to which a right was acquired up to the date of the final divorce hearing.

Tenn. Code Ann. § 36-4-121(b)(1)(A) (2017). Unless fraudulently conveyed, "property once owned by a spouse . . . , but not owned by either spouse at the time of divorce, is not subject to classification and division or distribution when the divorce is pronounced." *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996). Classification of property presents a question of fact. *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). So we review the classification decision de novo upon the record with a presumption of correctness. Tenn. R. App. P. 13(d).

Wife testified to real estate owned during the marriage, though Husband "had transferred [several properties] to his father's name and a couple of friends." Wife provided a list of the properties, 16 in all, along with their value, the amount of debt associated with the property, and the equity. The court admitted the list as Exhibit 2.

In its decree, the court addressed properties owned both before and after the filing of the divorce.

> During the marriage, [Husband] purchased several pieces of real property for rental purposes. He used lines of credit against a previous marital residence and current marital residence to secure funds to purchase the rental properties. [Husband] deposited the rental proceeds into the parties' joint bank account. Funds from the joint account were used to pay expenses for the properties. The Court finds the properties are marital assets and are therefore subject to equitable division by this Court. [Husband] conveyed several pieces of rental property to third parties shortly before [Wife] filed her Complaint for Divorce. [Husband] conveyed three (3) pieces of rental property to third parties after [Wife] filed her Complaint for Divorce. Such conveyances being in violation of the statutory injunction placed upon divorcing parties pursuant to Tenn. Code Ann. § 36-4-106(d).

6

The court then awarded Wife six properties, the first six listed on Exhibit 2, and awarded Husband "the remainder of the real property listed on Exhibit 2."

Husband contends that the court's award "was problematic because the parties did not own nine of the ten parcels awarded to [Husband]." But we do not interpret the court's order as awarding properties to Husband that the couple no longer owned. The term "remainder of the real property listed on Exhibit 2" referred to a single property located at 15 Decatur Street in Nashville.[2] The property was listed seventh on Exhibit 2, and the testimony established that Husband had an ownership interest in the property with another person.

Husband also complains that the court failed to value the marital property or determine the amount of marital debt and failed to give "thoughtful consideration" to the statutory factors that guide the division of marital property. These complaints implicate the trial court's responsibility to make factual findings. Under Tennessee Rule of Civil Procedure 52.01, in bench trials, the court must "find the facts specially and . . . state separately its conclusions of law." Tenn. R. Civ. P. 52.01.

We agree with Husband that the court's divorce decree lacks some factual findings. But when confronted with insufficient findings of fact, an appellate court is not without alternatives. One alternative is to vacate the decision and remand so that the trial court can make specific findings of fact and conclusions of law. *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). Another alternative is to conduct a de novo review of the record to determine where the preponderance of the evidence lies. *Id.* The appropriate alternative depends on the particular circumstances of the case, including the adequacy of the record, the fact-intensive nature of the case, and whether witness credibility determinations must be made. *See id.* (declining to conduct a de novo review because credibility determinations were necessary to resolve factual disputes); *Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, at *26 (Tenn. Ct. App. July 13, 2012) (stating that independent review is appropriate when the case involves a legal issue or the court's decision is "readily ascertainable").

Here, we conclude that the better alternative is to conduct a de novo review of the record to determine where the preponderance of the evidence lies. Although the division of marital property is a fact-intensive inquiry involving the careful weighing of the relevant statutory factors, only Wife offered testimony concerning marital property. So there are no disputed factual assertions or credibility determinations that must be made.

---

[2] Although not part of the divorce decree, the judge's comments from the bench are consistent with the interpretation that the decree only awarded properties in which at least one of the parties retained an interest. In referring to the properties that Husband transferred, the judge stated, "you can't do anything [with those properties]."

On this record, we discern that the court relied on the property values and debt amounts listed in Exhibit 2.[3] And based on the factual findings made by the court, the court relied heavily on two statutory factors in making its property division: duration of the marriage and dissipation of assets. *See* Tenn. Code Ann. § 36-4-121(c)(1), (5)(B). The parties had been married 18 years, and Wife testified that Husband had sold marital property in the months leading up to the divorce and after the divorce. The court found that the property transfers by Husband after the filing of the divorce violated a statutory injunction against such transfers. *See id.* § 36-4-106(d) (2017) ("enjoining both parties from transferring, assigning, . . . or in any way disposing . . . of any marital property" after the filing of the divorce). The evidence does not preponderate against these factual findings.

Given the facts, we cannot say the court's division of the marital property was inequitable or an abuse of discretion. The timing of Husband's property transfers, along with the length of the marriage, favored awarding a greater percentage of the marital assets to Wife.

C.

Much like the division of the marital estate, alimony decisions are fact-driven and "involve[] the careful balancing of many factors." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The court's decision should be made after considering the factors in Tennessee Code Annotated § 36-5-121(i), particularly the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id.* at 109-10.

The type of alimony awarded Wife, alimony *in futuro*, is "intended to provide support on a long-term basis until the death or remarriage of the recipient." *Id.* at 107; Tenn. Code Ann. § 36-5-121(f)(1) (2017). This long-term support is awarded when one spouse is relatively disadvantaged and rehabilitation is not feasible. Tenn. Code Ann. § 36-5-121(f)(1). Rehabilitation is not feasible if,

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be

---

[3] Exhibit 2 included the fair market value of each real property and, if known to Wife, the amount of debt encumbering the property. The exhibit failed to list values for the parties' vehicles, but we decline to grant Husband relief on this basis. Under Rule 36(a) of the Tennessee Rules of Appellate Procedure, relief need not "be granted to a party responsible for an error or who failed to take whatever action is reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36. Husband refused to provide asset information to Wife in discovery. When asked to explain his refusal, Husband said, "I don't plan on getting a divorce, so I don't really – I'm not going to forfeit that information for, you know – I'm not – I'm not getting a divorce."

available to the other spouse, considering the relevant statutory factors and the equities between the parties.

*Id.*

Husband complains that the evidence in the record does not support the determination that Wife was the economically disadvantaged spouse. He argues this is especially true given that Wife "received the lion's share of the marital estate."

We discern no abuse of discretion in the trial court's award of alimony *in futuro*. Wife testified that she earned gross income of $3,300 per month. Her income and expense statement revealed reasonable monthly expenses post-divorce that resulted in a deficit each month of approximately $2,000. Wife's monthly deficit indicated a need for support. As for Husband's income, Wife was hesitant to testify about Husband's occupation. But over the course of the marriage, Husband accumulated a substantial real estate portfolio, including several properties that were income generating. He also acquired several vehicles. As a result of the court's property division, Husband still owned at least one rental property, and he would be relieved of the debts associated with the properties and vehicles awarded to Wife. Husband possessed the ability the pay.

### D.

Wife seeks her attorney's fees on appeal "in the amount of $10,000." In a divorce, we may award attorney's fees incurred in an appeal. *Seaton v. Seaton*, 516 S.W.2d 91, 93 (Tenn. 1974). The decision to award fees lies within our discretion. *See Gonsewski*, 350 S.W.3d at 113. But "[s]uch awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay them." *Id.* (citations omitted).

We decline to award Wife attorney's fees incurred on appeal.

### III.

We affirm the judgment of the trial court. This case is remanded for any further proceedings, consistent with this decision, that may be necessary.

_____
W. NEAL MCBRAYER, JUDGE

9